## STATE v. RICHARD LEE WINSTON AND ANOTHER.

219 N. W. 2d 617.

June 28, 1974—No. 44260.

*C. Paul Jones,* State Public Defender, and *William F. Messinger* and *Douglas A. Hedin,* Assistant State Public Defenders, for appellants.

*Warren Spannaus,* Attorney General, *Gary W. Flakne,* County Attorney, and *Theodore R. Rix, Michael McGlennen,* and *Vernon E. Bergstrom,* Assistant County Attorneys, for respondent.

Heard before Peterson, Kelly, and Todd, JJ., and considered and decided by the court.

PER CURIAM.

Defendants appeal from judgments of conviction following trial by a jury for burglary under Minn. St. 609.58, subd. 2(3). Defendants were tried jointly for the alleged offenses and jointly appeal. We affirm the judgments of conviction entered upon the jury verdicts.

On July 14, 1972, Rolf Turnquist returned to his home in Wayzata, Minnesota, accompanied by friends, at approximately 9:45 p. m. Upon entering the driveway, a strange four-door Ford automobile was noticed parked with a television set in the open trunk and a stereo set lying on the ground alongside. Mr. Turnquist instructed his friends to go next door and call the police. The police arrived shortly. At approximately the same time, two men knocked upon the door of the home of a Mr. and Mrs. Hanley located about 6/10 of a mile from the Turnquist home, informing Mrs. Hanley that their car had broken down some distance away and that they needed to call for a ride. They were admitted. Mrs. Hanley described them as out of breath and sweating.

The phone call was made and Mrs. Hanley gave directions to the party on the phone how to find the house. The two men then sat down in the living room of the Hanley home to wait and were furnished a beer by Mrs. Hanley and visited with her and two of her children. The children were sent out to see if the car was there. When one of them called in that the sheriff was approaching the house, the two men left the home and fled.

Using descriptions given by the Hanleys, the police eventually

picked up two suspects, defendants here, the next morning. They were taken to the police station where they were informed they were being held for burglary charges. Miranda warnings were given. Sheriff's deputy James Parks testified that defendant Winston gave his address at 4209 Brookdale Drive, Brooklyn Park, Minnesota. Subsequently, Officer Parks conversed with defendant Douglas who had given a fictitious name at the time of his arrest. Douglas explained that he did this out of fear when he was booked. He did not give any permanent address in Minneapolis but indicated an address in California.

The vehicle which was abandoned at the Turnquist home was registered to a Barbara Johnson who informed the police that she had sold it to a Kathleen Warling. Evidence established that Kathleen Warling resided at 4209 Brookdale Drive at the time of the alleged burglary. Evidence further established that both defendants had been seen at the Warling premises and had been living there. Other evidence regarding documents and unrelated police calls to the residence established the fact of defendants' residence at these premises.

Upon appeal, defendants claim that the trial court erred in admitting documents discovered in the vehicle abandoned at the Turnquist house containing reference by name to defendant Douglas; that the state failed to establish the proper links in the chain of possession of documents discovered in the vehicle; that the state committed prejudicial error in showing to the Hanleys single pictures of the defendants on the day of the arrest; and further that the trial court improperly, over objections of defendants, permitted William Kinsel, a probation officer who contacted defendants in jail following the arrest for purposes of making a recommendation in establishing their bail, to testify as to the address given to him at the time of such interview.

Defendants' first claim of error goes to the sufficiency of the foundation for the admission of those items[1] discovered in the

---

[1] The challenged items include: An empty wallet; eight documents from the wallet with name of Norman Gerald Douglas, Douglas or Nor-

abandoned vehicle. In this area, the trial court has broad discretion. Lundgren v. Union Indemnity Co. 171 Minn. 122, 213 N. W. 553 (1927). The possibility that the documents here belonged to anyone other than defendant Douglas is so remote that we cannot say that the trial court abused its discretion. See, State v. Wiley, 295 Minn. 411, 205 N. W. 2d 667 (1973).

A showing of continuous chain of possession is required to insure that the original item has neither been exchanged with another, contaminated, nor altered. Where the item offered possesses characteristics which are fairly unique and readily identifiable and its substance is relatively impervious to change, the trial court has broad discretion to admit on the basis of testimony that the item is the one in question and is in a substantially unchanged condition.[2] Officer John Reed of the Hennepin County Sheriff's Department testified that the items were those that he found in the glove compartment of the abandoned vehicle and that they were in the same condition as when he found them. We find no abuse of discretion.

Convictions based on eyewitnesses' identification at trial following a pretrial identification by photographs must each be considered on its own facts and will be set aside only if such pretrial photographic identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irrepairable misidentification." Simmons v. United States, 390 U. S. 377, 384, 88 S. Ct. 967, 971, 19 L. ed. 2d 1247, 1253 (1968). In-trial identifications will not be excluded if the state can establish by clear and convincing evidence that the in-court identifications are based upon observations of the suspects, independent

_____

man Douglas; a receipt for automobile purchase with name of Norman Douglas; automobile transfer card of license 3MS814; telephone bill to Kathy Warling; I.D. card with name Norman G. Douglas; unemployment insurance book with name Norman Douglas; appointment card and sales receipts with name Norman Douglas; and a map and other items.

[2] McCormick, Evidence (2 ed.), § 212, p. 527; 7 Wigmore, Evidence (3 ed.), § 2129.

of the photographs. State v. Watts, 296 Minn. 354, 208 N. W. 2d 748 (1973). Defendants were in the Hanley home for at least 20 minutes, during which time they drank beer and conducted casual conversation with Mrs. Hanley and her sons. The Hanleys were able to give the police such accurate descriptions of the defendants that they were apprehended in separate locations the following morning. The Hanleys clearly had sufficient independent observation of defendants that their in-court identifications were sufficient under constitutional standards.

The court is considerably troubled by the fourth charge of error relating to the admission of evidence from the probation officer. Absent other compelling evidence, which in this case establishes beyond a reasonable doubt the fact of residence of defendants at the address in question, we would be compelled to reverse. However, since the evidence is adequate in this case to establish the fact of residence of defendants at the home where the automobile, which was abandoned, was maintained by its owner, we think the error in this case was not prejudicial.

However, we are constrained to observe that the practice followed in this case of calling the probation officer to testify regarding information given to him at the time he was conducting his interview for the sole purpose of arranging bail seriously jeopardizes a very noteworthy and outstanding program presently being operated in Hennepin County. We need not detail the specifics of this program except to state that the court rates it as most commendable and severely admonishes any infringements which would limit its use.

We hereby hold that such evidence given to the probation officer, serving in the capacity of arranging bail for defendants, cannot be used in the prosecution of said defendants. The Precourt Screening Unit Procedural Manual containing procedures and forms used in Hennepin County in connection with this program includes form No. HC3293 entitled, "Recognizance Evaluation Agreement." Part of that agreement provides that no questions will be asked of a defendant during the interview regard-

ing the offense with which he is charged. It seems appropriate to require that the state honor such an agreement. The testimony of the probation officer in this case was cumulative, of no particular value to the prosecution's case, and only served to jeopardize the bail program in Hennepin County.

Affirmed.

MR. JUSTICE SCOTT took no part in the consideration or decision of this case.