**STATE of Minnesota, Respondent,**

v.

**Charles JACKSON, Appellant.**

**No. 81–1331.**

Supreme Court of Minnesota.

Nov. 5, 1982.

Douglas Hall and William E. McGee, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Thomas A. Weist, Richard Osborne, Beverly Wolfe and Toni A. Beitz, Asst. County Attys., Minneapolis, for respondent.

SIMONETT, Justice.

Defendant appeals his burglary conviction and a denial of his motion for a new trial on the ground that the trial court erred in admitting evidence of statements made by the defendant to a probation officer during a presentence investigation pursuant to a guilty plea which was subsequently withdrawn. We agree the statements were improperly admitted and we reverse and remand for a new trial.

Defendant Charles Jackson was arrested for burglarizing a Minneapolis apartment and entered a plea of not guilty. Thereafter, as a result of negotiations, Jackson appeared in court and withdrew his not guilty plea and entered a guilty plea. Claiming intoxication and loss of memory, Jackson entered his plea pursuant to *State ex rel. Norgaard v. Tahash,* 261 Minn. 106, 110 N.W.2d 867 (1961), under which a defendant who lacks independent recollection of the crime may nevertheless plead guilty if the evidence the state offers to present is sufficient to convince him and his counsel of his guilt. The trial court accepted the plea subject to a presentence investigation. Jackson was advised that, pursuant to the plea agreement, if the plea were accepted, no jail term would be imposed, but that if the plea were rejected he could reenter a not guilty plea. The trial court advised Jackson "to cooperate fully" with the persons making the presentence investigation report. About a month later when the presentence investigation report was to be presented, Jackson appeared in court and asked to withdraw his guilty plea. His request was granted, and on July 20, 1981, trial commenced before a different judge.

At trial, the state introduced evidence establishing that defendant and a companion were found in the apartment where they had no right to be about 4 a.m., together with other evidence of the condition of the premises and its contents indicative of burglary.

Jackson then took the stand in his own defense. He testified he had been drinking on the night in question but that he did not remember leaving the bar nor anything more until waking up in jail the next morning. On cross-examination the state, over objection, put into evidence a statement handwritten by Jackson as part of the presentence investigation report in which he gave his account of what had happened. This evidence came in without mention of the circumstances under which the statement was given, so that the jury did not

know the statement was part of a presentence investigation report made to a probation officer. In his statement, Jackson recounted various events of the evening after leaving the bar. Nothing in the statement indicated any felonious intent on defendant's part, and the statement was consistent with defendant's claim that he had entered the apartment thinking it was his mother's apartment across the hall. The statement did, however, tend to impeach Jackson's claim that he was too intoxicated to remember anything.

Confronted with the statement, Jackson, still under cross-examination, admitted writing each sentence but claimed he had written what he understood or was told had happened, not what he himself remembered. On redirect, defense counsel attempted to bring out that Jackson had written the statement in connection with a guilty plea later withdrawn and apparently also to introduce testimonial statements made by Jackson in the prior court proceedings that accompanied his guilty plea and which corroborated his trial testimony about lack of memory. The trial court, however, held that this evidence was not admissible under Minn.R.Evid. 410. In rebuttal, the state called the probation officer who had submitted the presentence investigation report; she testified that Jackson told her he was relying on his memory, although she conceded that she did not recall if Jackson was relying solely on memory.

On appeal, defendant-appellant claims the court erred in regard to the written statement by (a) allowing Jackson to be cross-examined about the statement, (b) allowing it into evidence, and (c) allowing the probation officer to testify about it. In addition to claiming that admission of this evidence was contrary to Minn.R.Evid. 410, appellant also asserts the testimony came in contrary to Minn.R.Crim.P. 15.06 and 27.02, subd. 4, and further, was in violation of defendant's right not to incriminate himself under the state and federal constitutions.

We take up as the first issue whether the use of defendant's statement to the presentence investigation officer violates Minn.R. Evid. 410, since we find this issue dispositive. This rule provides:

> Evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime *or of statements made in connection with any of the foregoing pleas or offers*, is not admissible in any civil, criminal, or administrative action, case, or proceeding whether offered for or against the person who made the plea or offer.

(Emphasis added.)

First, the state argues that nothing in Rule 410 prohibits the admissibility of Jackson's presentence investigation statement; that Jackson's statement was neither a "plea of guilty" nor an "offer to plead guilty," nor was it a "[statement] made in connection with any of the foregoing pleas or offers." The state contends that "statements made in connection with" refers only to statements made in court or in discussions with the prosecutor in the plea bargaining process.[1] Second, the state argues that, in any event, defendant's statements should be admissible if used, as here, only for impeachment. We take up these arguments in turn.

■ 1. The inadmissibility of a withdrawn guilty plea is nothing new and is well-settled common law. *Kercheval v.*

---

1. *Compare* Minn.R.Crim.P. 15.06, which provides:

> If the defendant enters a plea of guilty which is not accepted or which is withdrawn, neither *the plea discussions,* nor the plea agreement, nor the plea shall be received in evidence against or in favor of the defendant in any criminal, civil or administrative proceeding.

(Emphasis added.)

The state argues that the phrase "plea discussions" refers at most only to negotiations conducted between the prosecutor and the defense attorney. The phrase does seem to be used in this sense in the standards and commentary set out in Part III of the ABA Standards, *Pleas of Guilty,* although compare Fed.R. Crim.P. 11(e)(6), both before and after the 1980 amendments. As Rule 11(e)(6) now reads, a presentence investigation statement would not be admissible under the federal rule.

Since we dispose of this case on the basis of Rule 410, we do not reach the issue of the applicability of our Minn.R.Crim.P. 15.06.

*United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); *State v. Anderson,* 173 Minn. 293, 217 N.W. 351 (1927). Once withdrawn, the plea is a nullity *ab initio* and to allow evidence of it is inconsistent with its legal obliteration. This same reasoning also has long made inadmissible evidence of statements made with respect to a plea in court proceedings by a defendant who later withdraws his plea. In *State v. Hayes,* 285 Minn. 199, 201, 172 N.W.2d 324, 325 (1969), for example, we held "that evidence of prior proceedings in which a plea of guilty was vacated or withdrawn is as objectionable as evidence of the plea itself." And in *State v. Hook,* 174 Minn. 590, 592, 219 N.W. 926, 927 (1928), we said, "We are unable to separate the statement made by the defendant to the presiding judge from the rest of the vacated judicial ·proceeding." *See also State v. Reardon,* 245 Minn. 509, 73 N.W.2d 192 (1955); *State v. Sha,* 292 Minn. 182, 193 N.W.2d 829 (1972).

It is clear, then, from both our case law and Rule 410, that in-court statements, as well as the plea itself, are to be treated as if never made when the guilty plea is withdrawn. This being so, it seems to us that other statements made out of court but as part of the presentence investigation are likewise inadmissible. Both the in-court and the out-of-court statements are integral parts of the plea proceedings and cannot realistically be separated. Here the out-of-court statements were made pursuant to a presentence investigation ordered by the trial court, in which the defendant was expected to cooperate, and which statements were to be used in determining whether or not the court would accept the plea and plea agreement.

This being so, we think, and we so hold, that defendant's presentence investigation statements are "statements made in connection with" the plea later withdrawn, as that phrase is used in Rule 410. This seems to us the plain import of the language of the rule. *Cf. People v. George,* 69 Mich.App. 403, 245 N.W.2d 65 (1976).

Another policy consideration also supports this construction of the rule, namely, "the promotion of disposition of criminal cases by compromise." Advisory Committee's Note to Federal Rules of Evidence Rule 410, *reprinted in* 46 F.R.D. 161, 241 (1969). The propriety of plea discussions and plea agreements is well recognized, *see, e.g., Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971), and *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977). The ABA Standards, for example, state that conviction without trial will and should continue, with proper safeguards, to be a most frequent means for the disposition of criminal cases. "This assumption," says the Advisory Committee, "is not based upon notions of expediency, but rather upon the conclusion that a number of values are served by the disposition of many criminal cases without trial." ABA Standards, *Pleas of Guilty,* Introduction (2d ed. 1980). This policy explains the evidentiary privilege which is afforded for plea negotiations. Just as evidence of offers to compromise a civil lawsuit are not admissible in evidence, *see* Minn.R.Evid. 408, so, if negotiations for compromise of a criminal case are to be fruitful, evidence of plea-related statements must likewise be inadmissible in the event negotiations abort. *Compare State v. Winston,* 300 Minn. 314, 219 N.W.2d 617 (1974), where this court, in dictum, condemned the practice of calling probation officers to testify concerning statements made by a defendant during a bail conference, noting our concern that this practice jeopardizes a noteworthy bail program.

2. The state next argues that a defendant's presentence investigation statement, if not admissible as direct evidence, should at least be admissible to impeach. A defendant should not be able to tell one story in his presentence investigation report, argues the state, and another to the jury; if he does, he should either choose not to take the witness stand or to take the stand and explain the discrepancy.

The state says Colorado case law supports its position. In *People v. Cole,* 195 Colo. 483, 584 P.2d 71 (1978), a divided court held that statements made by defendant during a court proceeding in connection with a withdrawn plea are admissible at trial for impeachment if voluntary and trustworthy. In *Gelfand v. People,* 196 Colo. 487, 586 P.2d

1331 (1978), decided 2 months after a rehearing in *Cole,* the Colorado Supreme Court, without mentioning *Cole,* held that out-of-court statements made to a probation officer during plea bargaining negotiations cannot be used in a subsequent trial in the state's case-in-chief. In neither case, however, were rules of evidence directly involved, so the cases are of little help to us here.[2]

We must look to our own rules of evidence for an answer, and we are persuaded that our Rule 410 does not allow an impeachment exception. Certainly no exception is set out in the rule, and we do not think we should add one of our own making. Nor is any such exception set out in Minn.R.Crim.P. 15.06. We find it significant that the original Federal Rule 410, the model for our rule, did contain an express impeachment exception which was subsequently dropped. For a brief discussion of the history of Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410, *see United States v. Law-* *son,* 683 F.2d 688, 692–93 (2d Cir.1982).[3] The drafters of Minn.R.Evid. 410 must have been aware of the controversy over the impeachment exception in the federal rules, since it occurred near the beginning of their deliberations; it seems reasonable to conclude that our drafters decided not to provide for either an impeachment or a perjury exception. Instead, our Rule 410 says simply that plea-related statements shall not be received "whether offered for or against" defendant. While to exclude defendant's statements even for impeachment may hamper truth seeking, the rulemakers have balanced that interest against the chilling effect on plea negotiations and have struck the balance in favor of plea bargaining.

3. We need not, therefore, discuss the other grounds raised by appellant for the inadmissibility of the defendant's statements. We hold that, under Minn.R.Evid. 410, statements, made by a defendant for a presentence investigation report ordered by the court as part of the proceedings to

---

**2.** Since Colorado did not have its own rules of evidence at the time *People v. Cole,* 195 Colo. 483, 584 P.2d 71 (Colo.1978), was decided, its supreme court in *Cole* relied on *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), where statements taken in violation of *Miranda* were held admissible for impeachment. Since our decision in this case is based on our Minnesota Rules of Evidence, we need not discuss *Harris.* Other state courts, however, have refused to extend *Harris* to plea-related statements, observing that such statements are not being excluded to deter official misconduct but to encourage plea discussions. *See State v. Trujillo,* 93 N.M. 724, 605 P.2d 232 (1980); *State v. Vargas,* 127 Ariz. 59, 618 P.2d 229 (1980); and *Mann v. State,* 96 Nev. 62, 605 P.2d 209 (1980). Both *Trujillo* and *Vargas* rely, as we do, on rules which, like Minn.R.Evid. 410, are borrowed from Fed.R.Evid. 410, to hold plea-related statements inadmissible for impeachment purposes. Only recently, the Second Circuit Court of Appeals held that the federal rule is not subject to any impeachment exception. *United States v. Lawson,* 683 F.2d 688 (2d Cir.1982).

**3.** The checkered history of the two federal rules is illustrated by the Colorado cases. In *People v. Cole,* 195 Colo. 483, 584 P.2d 71 (1978), the trial court had ruled that plea-related statements made by the defendant, if no reference was made to the context in which they arose, could be used later to impeach him. The trial court considered persuasive Fed.R.Evid. 410 as it then read in 1977, and which expressly allowed admission of plea statements made in court for impeachment purposes. On appeal to the Colorado Court of Appeals, that court reversed, pointing out that the impeachment exception of the federal rule had been superseded by an amendment to Fed.R.Crim.P. 11(e)(6), which forbade admissibility of "statements made in connection with, and relevant to" any withdrawn plea. The court of appeals consequently held that the plea-related statements could not be admitted since this would undermine the plea bargaining process. *See People v. Cole,* 39 Colo.App. 323, 570 P.2d 8 (1977). The Colorado Supreme Court then, as we have seen, reversed the court of appeals. *People v. Cole,* 195 Colo. 483, 584 P.2d 71 (1978).

Effective January 1, 1980, Colorado adopted its own version of Rule 410, patterned after the federal rule but adding its own exception, apparently incorporating the holding of its supreme court in *Cole,* that "[t]his rule shall not apply to the introduction of voluntary and reliable statements made in court on the record in connection with any of the foregoing pleas or offers where offered for impeachment purposes or in a subsequent prosecution of the declarant for perjury or false statement." Apparently the drafters of the Colorado rule, in adopting the federal version of Rule 410, felt it necessary, if plea-related statements made in court were to be allowed for impeachment, to say so expressly.

determine whether or not the plea agreement will be accepted, are inadmissible in a subsequent trial after the guilty plea is withdrawn, whether offered as substantive evidence or for impeachment purposes.

The admission of defendant's statements in this case was prejudicial to his defense. Consequently, the conviction should be reversed and the case be remanded for a new trial.

Reversed and remanded for a new trial.