Ivory Lee WILSON *v.* STATE of Arkansas

5707                                                     484 S.W. 2d 82

Opinion delivered September 4, 1972

*William C. McArthur,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Milton Lueken,* Asst. Atty. Gen., for appellee.

J. Fred Jones, Justice. Ivory Lee Wilson was convicted by a Pulaski County Circuit Court jury and was sentenced to life imprisonment for the crime of first degree rape. On appeal to this court he designates five points upon which he relies for reversal, but since we must reverse on the fifth point we need not discuss the others. *Satterfield* v. *State,* 245 Ark. 337, 432 S.W. 2d 472; *Simmons* v. *State,* 233 Ark. 616, 346 S.W. 2d 197.

After electing to testify in his defense at the trial, the appellant admitted sexual intercourse with the prosecutrix at the time and place alleged in the information and as testified by her, but he testified that it was with her acquiescence and consent. The prosecutrix testified that the act was accomplished under the persuading blade of an open pocketknife and the jury apparently believed her. The sufficiency of the evidence to sustain the conviction is not questioned on this appeal, so we discuss it no further.

Under the appellant's fifth point he contends that the trial court erred in denying his motion for a mistrial because of imflammatory and prejudicial remarks by the prosecuting attorney in his closing argument to the jury. The argument complained of and the objection thereto appears in the record as follows:

> "On cross-examination of Miss Fraser, Mr. Carpenter asked her about whether she had made an agreement with the Prosecuting Attorney's office to accept some sort of recommendation on a plea of guilty with the recommendation being that he receive a suspended sentence. She said she had gone along with it. She gave you her reasons why. I'm not going to go over all of her reasons why. *Ladies and Gentlemen, the only*

*difference from December 30, 1970, and today is that man is just as guilty as he was going to plead then.* The only difference was . . .

MR. MCARTHUR: Your Honor, I've got to ask for a mistrial on the basis of that statement. He has stated conclusions not in evidence. There was no mention of a plea of guilty ever being entered by this man on this charge and he just stated to the jury that there has been. If he was not there he should not comment on it.

THE COURT: The jury will remember what the testimony was and be guided solely by the testimony in the case and not accept the statements of counsel as evidence. The motion for a mistrial will be denied." (Emphasis added).

It is apparent from the record that sometime prior to trial the prosecuting attorney and the appellant's attorney had carried on some discussions in the nature of "plea bargaining" and that the prosecutrix had been consulted in connection therewith. As already stated, the appellant admitted the act of sexual intercourse but maintained that it was a voluntary act on the part of the prosecutrix. The appellant also steadfastly denied that he had confessed his guilt to a police officer as was testified by the officer. There is no evidence in the record whatever that the appellant ever offered to enter a plea of guilty in exchange for a suspended sentence. The only evidence in the record pertaining to such plea is contained in the testimony of the prosecutrix as first brought out on cross-examination as follows:

"Q. Miss Fraser, did you on December 30, 1970, appear in open court at this court house and recommend to the court that a suspended sentence be given in this case?

A. I appeared before a judge.

Q. Before a judge and you made the recommendation?

A. I did not make that recommendation.

Q. Did you object to the recommendation being made?

A. No.

Q. You did appear in court?

A. I appeared in court.

Q. And you did not make the recommendation?

A. I didn't myself.

Q. But the [sic] did not object to it?

A. No.

Q. You did not?

A. No."

On redirect examination the prosecutrix testified on this point as follows:

"Q. Now, let's go all the way back to December 30, 1970, about recommending a suspended sentence, or agreeing to it. Was there some sort of an agreement that this man had if he was going to plead guilty that there would be a suspended sentence?

A. Yes.

Q. Okay. Did you make that recommendation?

A. No, I didn't.

Q. Did you agree to go along with it?

A. Yes.

Q. Why did you agree to go along with it?

A. When I found out that some of my friends were going to have to be subpoenaed for the most part. I

mean, it's bad enough that I have to be down here and to bring somebody in, somebody else who is not involved, it's a shame, I think. And I hadn't had any cooperation from the Prosecuting Attorney's office on a trial that was supposed to have been held in November for another one. There had been a recent rape case in the news for two weeks that they were trying and the publicity had me pretty shook up. I was in finals and I had broken up with my fiance already and I had just had it up to my head with it and I just couldn't see what I was going to gain from it in the first place. I was just sick of it.

Q. You just wanted it to be over?

A. That's right.

MR. HAMNER: You may ask.

## RECROSS EXAMINATION
By Mr. Carpenter:

Q. Miss Fraser, did I understand you correctly that the Prosecuting Attorney's office at that time forced you to make this recommendation?

A. No, sir.

MR. HAMNER: Your Honor, I'm going to object. She has stated twice that she did not make any recommendation herself.

THE COURT: Sustained.

MR. CARPENTER: (Continuing)

Q. Did they force you to remain silent while they made the recommendation?

A. It's on court records. They just ask me if the recommendation was agreeable with me. You can check that.

Q. What did you say?

A. I said that it was.

Q. All right. What was the Deputy's name at that time?

A. David Hale.

Q. Mr. David Hale?

A. Yes.

THE COURT: Anything further from the witness, Gentlemen?

MR. CARPENTER: (Continuing)

Q. Did you ever make this recommendation outside the courtroom?

A. No."

The above testimony elicited from the prosecuting witness is the only evidence in the entire record pertaining to a plea of guilty by the defendant. If any inference is to be drawn from this testimony, it would appear that the appellant refused to plead guilty rather than offered to do so in exchange for a suspended sentence.

In *Simmons* v. *State, supra,* we pointed out that one of the fundamental rules of trial practice in this state is that closing arguments of counsel must be confined to the question in issue, the evidence introduced at the trial, and all reasonable inferences and deductions which can be drawn therefrom.

There is no evidence in the record that the appellant ever offered or intended to plead guilty but certainly the jury could have logically inferred from the prosecuting attorney's statement in his closing argument that the appellant had offered to plead guilty but had failed to do so only because his demands for an outright acquittal, or at least some treatment more favorable to him than a suspended sentence, were not met or agreed to.

Plea bargaining has become a recognized and approved procedure in the practice of criminal law. The primary purpose of plea bargaining is to save the time and expense of jury trials in those cases where the accused is guilty and knows it, but where he might be inclined to save the state the time and expense of proving his guilt in exchange for a lesser penalty than he might reasonably expect at the hands of a jury. Plea bargaining is alien to jury trials and many reasons should be obvious why offers and counteroffers in plea bargaining have no place whatever in the evidence at jury trials.

We cannot say that the appellant was not prejudiced by the prosecuting attorney's statement in his closing argument in this case. We can say, however, that the trial court's admonition was not sufficient to remove whatever prejudice the statement may have incurred. *Simmons* v. *State, supra.* The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

HARRIS, C.J., not participating.