Willie Davis YOUNG *v.* STATE of Arkansas

CR 84-80                                    678 S.W.2d 329

Supreme Court of Arkansas
Opinion delivered October 22, 1984

*Mark Roberts* and *Charles R. Padgham,* for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant, Willie Davis Young, was charged with the offense of aggravated robbery. There was more than substantial evidence presented to sustain a conviction including the identification of appellant by the two victims of the robbery and a signed written statement by the appellant detailing his perpetration of the crime. The appellant's only defense was a denial of any knowledge of the robbery and a claim that he had continuously been under the influence of drugs on the day of the robbery. He was tried and convicted, found to be an habitual offender and sentenced to forty years imprisonment. Appellant argues four points for reversal, none of which has merit.

Appellant first argues that the trial court erred in not declaring a mistrial following his appearance before the jury during voir dire in prison garb. After the jury was seated appellant moved for a mistrial. The trial court denied the motion stating that it was not timely, and had it been made earlier the problem could have been corrected. The appellant argues that under *Estelle* v. *Williams*, 425 U.S. 501 (1976), the state cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothing. We refused to find error on this same argument in *Holloway, Welch & Campbell* v. *State*, 260 Ark. 250, 539 S.W.2d 435 (1976), where we noted that *Estelle* found the defendant's constitutional rights were violated only when he was *compelled* to wear identifiable prison clothing. In *Holloway* we found the defendants had waived their right to object as they had twice rejected the trial court's offer to allow them to change clothes and the record did not reflect the "distinctive" and "identifiable" attire required under *Estelle*, but only that the defendants were dressed in matching blue trousers and blue shirts.

In this case, the uniform was unquestionably distinctive and the trial court made no offer to the appellant to change clothes, but neither of these distinctions brings this case within the proscription of *Estelle*. As noted in *Holloway*, the critical factor in *Estelle* which brought about a violation of constitutional rights was the *compulsion to* wear the prison garb. Although *Estelle* recognized the

potentially prejudicial effect of a prison uniform, it did not find the practice inherently prejudicial absent the element of compulsion. The court noted that the judicial focus upon compulsion was due to instances frequently arising where the defendants preferred to appear in prison garments for tactical reasons.

Here, appellant waived his right against being so compelled. The right not to be attired in prison clothes can be waived as occurred in *Estelle* by failure to object and in *Holloway* by refusal of the trial court's offer of civilian clothing. Appellant in this case waived his right by not making his objection at the first opportunity to do so. *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981); *Haight* v. *State*, 259 Ark. 478, 533 S.W.2d 510 (1976). Appellant made no objection throughout the jury selection process and not until the jury was seated did he object. The trial court was correct in denying the motion on the basis of untimeliness. Additionally, although the appellant argues that he had no other clothes available to him, he made no showing whatsoever that he was forced to wear the prison attire, that a continuance was requested or that any request for other clothes was denied or that any such request was ever made. And as pointed out in *Estelle*, there was no duty on the part of the trial court to make any inquiry. "Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of the trial judges and counsel in our legal system." *Estelle* at 512.

Appellant next argues that the trial court erred in not declaring a mistrial following a statement by one of the state's witnesses concerning an offer by the defendant to enter a plea agreement. At the end of the direct examination of the manager of the drugstore that was robbed, the following exchange took place:

Q. Mr. West, is the man that robbed you with this pistol seated in this courtroom?

A.   Yes, he is.

Q.   Would you walk over to where he is and point him out for the jury?

A.   This gentleman here.

Q.   With the bandage on his foot?

A.   Yes, sir.

Q.   Okay, thank you. Take your seat back. There's no doubt in your mind?

A.   No doubt in my mind.

Q.   Okay.

A.   Plus his defense counsellors came down to the store and wanted to plea bargain —

MR. ROBERTS: Objection, Your Honor.

THE COURT: The objection will be sustained.

Q.   Let's don't go any further with that.

THE COURT: Please disregard anything about plea bargaining. It has no place in this trial.

The appellant argues that under our case law and Ark. Unif. R. Evid. R. 410[1], making evidence of withdrawn pleas and offers inadmissible, the trial court erred by not granting a mistrial. Our case law and the law generally, is clear that when such a reference is made by the trial court or the prosecutor, the prejudice is difficult to cure. *Wilson* v. *State,*

---

[1]Rule 410.   Withdrawn pleas and offers. — Evidence of a plea later withdrawn, of guilty or admission of the charge, or nolo contendere, or of an offer so to plead to the crime charged or any other crime, or of statements made in connection with any of the foregoing withdrawn pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer.

253 Ark. 19, 484 S.W.2d 82 (1972); Weinsteins' Evidence, § 410-03, p. 410-31-32. There is less certainty however when a statement referring to a plea offer is made inadvertently by a witness who bears no official relationship to the prosecution.

Knowing the primary purpose behind this rule sheds some light on the appropriate course to follow. *Weinstein, supra,* states: In the case of offers to plea, the soundest rationale is similar to that under Rule 408, dealing with offers to compromise — that is to say, the criminal prosecution system depends on pleas of guilty to dispose of the bulk of cases and frank discussion of such pleas should not be discouraged. § 410-01, p. 410-19. In *U.S.* v. *Grant,* 622 F.2d 308 (8th Cir. 1980) the court notes the goal of Rule 410 as stated by the Advisory Commission on the Federal Rules of Criminal Procedure: ". . . to permit the unrestrained candor which produces effective plea discussion between the attorney for the government and the attorney for the defendant or the defendant when acting pro se." Weinstein also says: "Where government counsel or the trial court deliberately interjects information about the existence of the withdrawn plea the prejudice would seem to be incurable. The defendant, in view of the clarity of Rule 410, is in effect deliberately being tried by means declared to be unfair. If the information is deliberately elicited by the government attorney or relied upon in his argument there is thus adequate basis for a new trial." § 410-03, p. 410-31-32.

The primary reasons for the rule then, lose much of their force when the statement is an inadvertent one by a witness. The purposes of encouraging candor and confidence in plea negotiations and preventing the defendant from being deliberately tried by unfair means will not be undermined by such remarks. While it is desirable to protect the plea bargaining process by the avoidance of prejudice to the defendant from such statements, the drastic remedy of a mistrial may be an inappropriate remedy for the curing of any prejudice that might occur. Rather, the question in most cases would more appropriately be left to the discretion of the trial court. Weinstein states: "Unlike matters of widespread knowledge — such as the existence of liability

insurance — the probability of an inadvertent or unintentional disclosure of the withdrawn plea by an unsuspecting witness is not significant. Nevertheless, the automatic retrial should not be granted if in fact it is perfectly clear the disclosure was inadvertent and reference to the plea did not affect the verdicts." § 410-03, p. 410-32. If it is determined then that the remark was inadvertent, and limited in its prejudicial effect, the trial court should admonish the jury to disregard the testimony, the traditional procedure to cure any prejudice that occurs as the result of a nonresponsive answer and potentially prejudicial and inadmissible testimony in general. *Queary* v. *State*, 259 Ark. 123, 531 S.W.2d 485 (1976); *Limber* v. *State*, 264 Ark. 479, 572 S.W.2d 402 (1978); *Roach* v. *State*, 255 Ark. 773, 503 S.W.2d 467 (1973). We said in *Queary*, "The law is that when a witness, in answer to a proper question, gives a nonresponsive answer stating matter that is incompetent and inadmissible as evidence, the trial court, on motion, should strike out the answer or as much of it as is improper, and direct the jury to disregard it as evidence in the case."

In this case, the reference to plea bargaining was clearly inadvertent, unsolicited and made by a lay witness. The statement related by the witness did not even refer to a traditional plea bargaining situation between the prosecutor and the defendant or his attorney, but rather an exchange between the defense counsel and a lay person where there would not be the expectation on the part of the defendant for the security granted by the rule in the official plea negotiations. The reference was short, the witness cut off, and the jury immediately and clearly admonished by the trial court to disregard the testimony. There is no requirement for a mistrial in this situation and the matter was properly within the discretion of the trial court. Under the circumstances of this case, there was no error in denying the motion for a mistrial and any prejudice that might have occurred was cured by the trial court's admonition to the jury.

Appellant argues for his third point that the trial court erred in not declaring a mistrial following statements he made during cross-examination concerning the length of the sentence he would receive. The sentencing range he

made reference to was that which he would be facing as an habitual offender. Appellant argues the statement alerted the jury prematurely to his habitual offender status and violated the structure of the sentencing procedure under Ark. Stat. Ann. § 41-1005 for habitual offenders and thereby denied him the right to a fair and impartial trial. The point was not timely raised and will not be considered on review. *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981).

As his last point appellant argues that an instruction on robbery should have been given as it is a lesser included offense of aggravated robbery and based on the evidence at trial it is clear that the jury could have found the appellant guilty of robbery. Appellant has misstated a conclusion of the facts in this case and the law. In *Lovelace* v. *State*, 276 Ark. 463, 637 S.W.2d 548 (1983) on a virtually identical set of facts the appellant raised the same argument which we rejected. We noted that there was no doubt from the evidence at the trial that a pistol was used in the commission of the offense. We cited *Hill* v. *State*, 276 Ark. 300, 634 S.W.2d 120 (1983) and said that if there is any evidence to support the giving of the instruction on the lesser included offense it must be given, but if there is no rational basis for acquitting the appellant of aggravated robbery and convicting him of the lesser offense of robbery, the lesser instruction need not be given. We found no rational basis for the lesser included offense because of the uncontrovertible evidence that a gun was used in the robbery. We said, "The appellant was guilty of aggravated robbery or nothing at all. Therefore it was not error to refuse to instruct on the lesser included offense." The same is true in this case. The employment of a gun in the robbery was never denied, challenged or controverted. Appellant's only defense was a denial of any memory of the crime and that he was under the influence of drugs on the day of the robbery. As in *Lovelace*, the appellant here was either guilty of aggravated robbery or nothing at all. As there was no rational basis for giving the instruction on the lesser included offense of robbery, there was no error in the court's denial of the appellant's requested instruction.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The majority opinion surgarcoats two important issues: 1) the appellant was compelled to stand trial before a jury in prison garb; and 2) the state's chief witness "volunteered" a statement about the defense attorney's coming to see him and offering to plea bargain.

First I will discuss the matter of the appellant being compelled to wear prison clothing before he was convicted on the charge being tried. The clothing was a bright orange jumpsuit with a target on the back and the word "jail" written across the target. Before any witness was called or evidence admitted the appellant moved for a mistrial because of the prison clothing. The court denied the motion because it was not timely. It was established that the appellant's civilian clothing could not be found by the sheriff. The appellant had no choice but to wear the only clothing furnished him. Surely the trial court, the prosecuting attorney, or the sheriff was aware that a trial was coming up and that it would be illegal to force the prisoner to stand trial in prison garb. *Estelle* v. *Williams*, 425 U.S. 501 (1976). A person in the appellant's position was not able to change the situation. Only those charged with the duty of giving the appellant a fair and impartial trial were in a position to prevent such an occurrence. In my opinion it was not ineffective assistance of counsel to anticipate that the appellant's constitutional rights would be protected. The fact that counsel waited a few minutes or failed to notice prior to the start of the trial should not prevent the assertion of the appellant's right to be tried in civil clothing. The appellant was compelled to go through the entire trial wearing prison clothing. It was a constant reminder to the jury that they were trying a man who was already a prisoner. A suspect who is given his rights warning may cease to talk at any point and claim his Fifth Amendment right to refrain from talking further. Likewise a prisoner should be allowed to elect to wear civilian clothing at any time during the trial.

Next I wish to point out the prejudice of the state's chief witness volunteering to mention the appellant's efforts to work out a plea bargain. The prosecutor asked his chief witness if the man who robbed him was in the room and the

answer was in the affirmative. The exact questions and answers are reproduced in the majority opinion. If the matter had been planned it could not have worked better. Therefore, this court now condones the perfect manner in which to inject improper and prejudicial material into the trial without fear of being forced to retry the case in a fair and impartial manner. The court admonished the jury to disregard the statement and this court approves such procedure as a cure for the error. On or about this same date we found prejudicial a statement of a trial judge that certain evidence was very suspect. *Tandy Corporation* v. *Bone,* 283 Ark. 399, 678 S.W.2d 312 (1984). To affirm one and reverse the other is inconsistent, in my opinion. Our Uniform Rule of Evidence 410 specifically prohibits an offer to plea bargain from being introduced in civil or criminal cases. The purpose of this rule and similar rules is to promote candor between the parties and to enhance the chances of successful settlement negotiations. *Mo. Pac. R.R.* v. *Arkansas Sheriff's Boys' Ranch,* 280 Ark. 53, 655 S.W.2d 389 (1983); *Cantlin* v. *Pavlovich,* 265 Ark. 654, 580 S.W.2d 190 (1979); *U.S.* v. *Grant,* 622 F.2d 308 (8th Cir. 1980). I agree with the majority that *Wilson* v. *State,* 253 Ark. 10, 484 S.W.2d 82 (1972) declares that reference by the prosecuting attorney to an offer to plea bargain is highly prejudicial. In *Wilson* the testimony relating to a plea bargain was given by the prosecuting witness. In reversing the verdict this court stated: "Plea bargaining is alien to jury trials and many reasons should be obvious why offers and counteroffers in plea bargaining have no place whatever in the evidence at jury trials."

In view of the express provisions of Rule 410 and prior precedent this case should be reversed and remanded for a new trial.