515 A.2d 1157

Joseph Melvin WRIGHT and Kenneth D. Coley

v.

STATE of Maryland.

No. 61, Sept. Term, 1984.

Court of Appeals of Maryland.

Oct. 17, 1986.

John L. Kopolow and Mark Colvin, Asst. Public Defenders (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellants.

Jillyn K. Schulze, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., SMITH *, ELDRIDGE, COLE, RODOWSKY, and COUCH, JJ., and EDWARD D. HIGINBOTHOM, Associate Judge of the Third Judicial Circuit (Retired) Specially Assigned.

ELDRIDGE, Judge.

This criminal case presents two questions, one relating to petitioner Wright and the other relating to petitioner Coley.

The context of the first question is as follows. The petitioner Wright, along with three codefendants, was tried before a jury on a charge of murder, based upon a theory of willful, deliberate and premeditated murder as well as upon a theory of felony murder, and on a charge of an underlying attempted felony. At the conclusion of the State's case, the trial judge granted a motion for a judgment of acquittal as to the attempted felony on the ground that the State's evidence was insufficient. The trial judge, however, denied the motion as to the murder charge because, in the court's view, there was sufficient evidence of willful, deliberate and premeditated murder for that charge to go to the jury. Thereafter, during the defense case, evidence was presented by a codefendant tending to show that Wright was involved in the commission of the attempted felony. The question is whether, under such circumstances, it was a violation of federal double jeopardy or Maryland common law principles for the murder charge to have been sub-

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

mitted to the jury on a felony murder theory and for Wright to have been convicted of felony murder.

The second question concerns the admissibility in evidence of a plea agreement entered between the State's Attorney and petitioner Coley, and Coley's confession pursuant to that agreement. Coley later rescinded the agreement and pled not guilty. He contends that the admission in evidence of the rescinded agreement and the incriminating statements, which were induced by the promises made by the State as its part of the bargain, violated the Maryland inducement rule set forth in cases such as *Hillard v. State*, 286 Md. 145, 406 A.2d 415 (1979).

The basic facts of the case, and the particular facts concerning the first issue, are as follows.[1] Petitioners Joseph Melvin Wright and Kenneth D. Coley were each indicted on charges of murder in the first degree, attempted robbery with a deadly weapon, conspiracy to commit robbery with a deadly weapon, use of a handgun in the commission of a felony, and other offenses, all arising from a single incident. Along with Sheldon Ball and Dwight Gilmore, they were jointly tried by a jury in the Circuit Court for Baltimore City.

At trial the State presented the testimony of several eyewitnesses to what the State contends was a shooting during an attempted robbery of an A&P supermarket. The gist of the testimony was that Wright, Coley and their accomplices ran into the supermarket wearing masks on their heads and carrying guns. They confronted a security guard; shots were fired, and Wright, Coley and their accomplices fled. The security guard died.

The State introduced no testimony that the men obtained money or property or even approached a cash register. Nevertheless, the State did introduce an edited statement of Coley, which indicated that he had planned a robbery along

---

**1.** The specific facts underlying the second issue will be set forth in that portion of the opinion dealing with the second issue.

with others whose identities were deleted from the statement. This same statement was later introduced in unexpurgated form during the defense case, in connection with Coley's testimony.

At the close of the State's case, the defendants moved for judgment of acquittal on all counts. Coley's motion was denied as to all counts. The trial court granted Wright's motion with regard to counts charging conspiracy to commit robbery with a deadly weapon and attempted robbery with a deadly weapon. The court denied Wright's motion with regard to the charges of conspiracy to commit murder, murder, and violations of the handgun statute, Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 36B(b) and (d). In connection with granting Wright's motion for judgment of acquittal on the charges of attempted armed robbery and conspiracy to rob, the trial judge ruled as follows (emphasis supplied):

> "THE COURT ... I agree with defense counsel that *there is not sufficient evidence to require the Defendants to put on a defense with respect to the charges of attempted armed robbery* and subordinate counts, nor the charge of conspiracy to commit armed robbery except for the Defendant Coley. I just cannot accept the State's position that there is that sufficient evidence, that reasonable inferences could be drawn. I think it will allow the jury to speculate far too much. These are criminal charges and there must be a much more exacting demand upon the State in criminal charges...."

The denial of Wright's motion for judgment of acquittal on the murder count was because the State was proceeding upon a theory of willful, deliberate and premeditated murder as well as felony murder.

Thereafter, the defendants put on their case. In addition, the State nol prossed all remaining charges against all defendants except for the murder and handgun charges.

■ After the conclusion of the defense case, and in connection with jury instructions, the trial judge decided

that the murder charges would be submitted to the jury on a felony murder theory as well as a willful, deliberate and premeditated murder theory, stating as follows (emphasis supplied):

"It's my view ... that felony murder is in the case, it's in the case because of Mr. Coley's testimony. It's true of course that I have dismissed the robbery or attempted robbery indictments against all the Defendants except Mr. Coley.... However, it's my view that it is not necessary for a jury to convict or even be able to convict a defendant of the underlying felony in order to find him guilty of a felony murder. It's my view that if the jury is able to find ... beyond a reasonable doubt that a particular Defendant had in fact committed or participated in the commission of a felony, and that in the course of attempting to commit that felony a killing took place, then the jury can find the Defendant guilty of the felony murder, not the underlying felony—they cannot find him guilty of that but the felony murder.... [I]t's my view that felony murder is now in the case. *It was not in the case at the end of the State's case.*"

Wright's counsel objected to submitting the felony murder theory to the jury. Nevertheless the trial court instructed the jury regarding felony murder as a possible verdict, as well as willful, deliberate and premeditated murder, and the court defined the elements of attempted robbery as the alleged offense underlying the felony murder theory.[2] Thus, the court's instructions included the following:

---

**2.** In Maryland, an attempt is a common-law misdemeanor. *Hardy v. State,* 301 Md. 124, 128, 482 A.2d 474 (1984). Nevertheless, the felony murder doctrine is applicable to homicides in the course of certain attempts. Code (1957, 1982 Repl.Vol.), Art. 27, § 410, provides as follows:

"All murder which shall be committed in the perpetration of, or attempt to perpetrate, any rape in any degree, sexual offense in the first or second degree, sodomy, mayhem, robbery, burglary, kidnapping as defined in §§ 337 and 338 of this article, storehouse breaking as defined in §§ 32 and 33 of this article, or daytime housebreaking as defined in § 30(b) of this article, or in the escape or

"I have already instructed you that murder in the first degree is the intentional killing of a human being with deliberation and premeditation. There is also this other type of murder which I have just mentioned, that which we call felony murder. A felony murder means a killing which is unintentional or unplanned but which occurred during the commission of a crime such as robbery or attempted robbery. Any person who participates in a robbery or an attempted robbery where a victim is killed is guilty of felony murder even though he did not do the actual killing or did not know or expect a killing or death would occur and did not assist in the killing itself.

"When a killing occurs during the commission of a crime it is still murder in the first degree if the killing itself was intentional, deliberate and premeditated. However, when a killing occurs during the commission of a crime but is not intentional, deliberate and premeditated, the killing is felony murder.

"You must ... decide whether or not the particular defendant, did or participated in this case in the crime of attempted robbery. If you find the defendant did not commit or participate in the commission of an attempted robbery then he can't be found guilty of felony murder....

"On the other hand, if you find the particular defendant did commit or participate in the crime of attempted robbery in this case, then you have to decide if he is guilty of murder in the first degree with premeditation and deliberation, guilty of murder in the second degree, guilty of a felony murder or not guilty of any type of murder altogether.

---

attempt to escape from the Maryland Penitentiary, the house of correction, the Baltimore City jail, or from any jail or penal institution in any of the counties of this State, shall be murder in the first degree."
Willful, deliberate and premeditated murder is covered by Art. 27, § 407.

"I have spoken of the crime of attempted robbery. What do we mean by attempted robbery? A robbery is defined as the...."

With regard to the count charging each defendant with use of a handgun in the commission of a crime of violence, the trial court instructed the jury that "[t]he crime of attempted robbery is specifically defined in our law as a crime of violence...."

The jurors were given a separate verdict sheet for each defendant, and, under the murder charge on the verdict sheet, there were four boxes to be checked or not: "1. not guilty; 2. guilty of murder in the first degree (deliberate and premeditated); 3. guilty of second degree murder; 4. guilty of felony murder." After deliberations, the jury found Wright guilty of felony murder, guilty of using a handgun in the commission of a crime of violence, and guilty of possessing a handgun. Coley was found guilty of felony murder only.[3] Wright was sentenced to life impris-

---

**3.** The rendition of the verdicts as to the defendants Coley and Wright were as follows:

"THE CLERK: As to Kenneth Coley, how say you, the jury, not guilty, guilty of murder in the first degree, guilty of murder in the second degree or guilty of felony murder?

"THE FORELADY: Guilty of felony murder.

"THE CLERK: Second Count, not guilty of using a handgun in the commission of a felony or crime of violence or guilty of using a handgun in the commission of a felony or crime of violence?

"THE FORELADY: Not guilty of using a handgun in the commission of a felony or crime of violence.

"THE CLERK: As to the Third Count, not guilty of possessing a handgun or guilty of possessing a handgun?

"THE FORELADY: Not guilty of possessing a handgun.

"THE CLERK: As to Joseph Wright, not guilty, guilty of murder in the first degree, deliberate and premeditated, guilty of murder in the second degree or guilty of felony murder?

"THE FORELADY: Guilty of felony murder.

"THE CLERK: As to the Second Count, not guilty of using a handgun in the commission of a felony or crime of violence or guilty of using a handgun in the commission of a felony or crime of violence?

"THE FORELADY: Guilty of using a handgun in the commission of a felony or crime of violence.

onment on the murder conviction and a fifteen year concurrent term for use of a handgun in the commission of a crime of violence. No sentence was imposed upon Wright for unlawfully carrying a handgun. Coley was sentenced to life imprisonment, fifteen years of which were purportedly suspended.

The Court of Special Appeals affirmed the convictions and Wright's sentences. Coley's sentence was vacated, and the case was remanded for resentencing in light of the doubt concerning the suspension provision. *Ball v. State*, 57 Md.App. 338, 470 A.2d 361 (1984).

This Court thereafter granted Wright's and Coley's petition for a writ of certiorari. The order granting the petition limited our review to (1) Wright's argument that the grant of the motion for judgment of acquittal on the attempted robbery charge precluded his convictions for felony murder and use of a handgun in the commission of a crime of violence and (2) Coley's argument that his repudiated plea agreement and incriminating statements made pursuant thereto were erroneously admitted into evidence because they were induced by the State's promise not to prosecute him for first degree murder.

## I.

Wright argued in the courts below, and argues here, that the submission of the felony murder theory to the jury and his conviction of felony murder, following the grant of his motion for judgment of acquittal as to the underlying

---

"THE CLERK: As to the Third Count, not guilty of possessing a handgun or guilty of possessing a handgun?
"THE FORELADY: Guilty of possessing a handgun."
A portion of the verdict sheet with respect to the murder charge against Wright was as follows:

"1. Not guilty. _____
"2. Guilty of murder in the first degree (deliberate and premeditated). _____
"3. Guilty of murder in the second degree. _____
"4. Guilty of felony murder. _√_"

felony, violated the Fifth Amendment prohibition against double jeopardy. He also relies upon the doctrine of collateral estoppel as it is embodied in the double jeopardy prohibition. Finally, he invokes Maryland common law principles set forth in cases such as *Brooks v. State,* 299 Md. 146, 472 A.2d 981 (1984); *Block v. State,* 286 Md. 266, 407 A.2d 320 (1979); and *Pugh v. State,* 271 Md. 701, 319 A.2d 542 (1974).

The Court of Special Appeals initially acknowledged that "this particular felony-murder and the underlying attempted robbery are 'the same offense' within the contemplation of *Newton v. State,* 280 Md. 260, 268, 373 A.2d 262 (1977); *State v. Frye,* 283 Md. 709, 712, 393 A.2d 1372 (1978); and *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)." 57 Md.App. at 371, 470 A.2d 361. *See also Morris v. Mathews,* 475 U.S. ——, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986); *Whalen v. United States,* 445 U.S. 684, 693–694, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980); *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). Nevertheless, in rejecting Wright's double jeopardy argument, the intermediate appellate court rigidly took the position that, except for "the prohibition against simultaneous multiple punishment," there are *no* "double jeopardy implications" within the "context of a single trial." 57 Md.App. at 371–372, 470 A.2d 361. The court was of the opinion that the double jeopardy prohibition was solely "against instituting a new and subsequent" prosecution following the termination of an earlier prosecution (*id.* at 372, 470 A.2d 361), that "[n]either double jeopardy, nor any other plea in bar, is interposed as a defense in the middle of an ongoing trial" (*id.* at 374, 470 A.2d 361), and that the "intra-trial time sequence is simply not the context to which double jeopardy law applies" (*id.* at 375, 470 A.2d 361).

While the view expressed by the Court of Special Appeals might be sound as a *general* rule, it is certainly not absolute. Moreover, in the context of what occurred in the instant case, both the Fifth Amendment prohibition against

double jeopardy and Maryland common law double jeopardy principles precluded the felony murder conviction.

Preliminarily, we point out that the grant of a motion for judgment of acquittal at the close of the prosecution's case, on the ground that the prosecution's evidence was insufficient for the charge to be submitted to the jury, is in substance a verdict of acquittal on that charge to the same extent as a jury's verdict of acquittal at the conclusion of the case. This view is reflected in the consistent holdings of the Supreme Court under the Double Jeopardy Clause of the Fifth Amendment. *Smalis v. Pennsylvania,* 476 U.S. ——, 106 S.Ct. 1745, 1748, 90 L.Ed.2d 116 (1986) (trial court sustained a demurrer to some charges, pursuant to a Pennsylvania procedural rule, at the close of the prosecution's case); *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (grant of a motion for judgment of acquittal); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). Wholly apart from Fifth Amendment requirements, this is the effect of a grant of a motion for judgment of acquittal under Maryland law. *Brooks v. State, supra,* 299 Md. at 154, 472 A.2d 981 ("the grant of a motion for judgment of acquittal has the same force and effect as the return of a verdict of not guilty by the trier of fact, be it the court or a jury").

■ Since the petitioner Wright was, therefore, acquitted of the underlying offense, we believe that the later submission of the felony murder charge to the jury and Wright's conviction of felony murder was contrary to the settled principle, under both the Fifth Amendment and Maryland common law, that an acquittal on the merits is ordinarily final and precludes further trial proceedings upon the same charge. *See, e.g., Smalis v. Pennsylvania, supra,* 106 S.Ct. 1745; *Arizona v. Rumsey,* 467 U.S. 203, 104 S.Ct. 2305, 2310–2311, 81 L.Ed.2d 164 (1984); *United States v. Scott,* 437 U.S. 82, 91, 96–97, 98 S.Ct. 2187, 2194, 2196–2197, 57 L.Ed.2d 65 (1978); *Sanabria v. United States, supra,*

437 U.S. at 64, 69, 77–78, 98 S.Ct. at 2178, 2181, 2185–86; *United States v. Martin Linen Supply Co., supra,* 430 U.S. at 571, 97 S.Ct. at 1354; *Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962); *Green v. United States,* 355 U.S. 184, 188, 192, 78 S.Ct. 221, 223–224, 226, 2 L.Ed.2d 199, 61 A.L.R.2d 1119 (1957); *Kepner v. United States,* 195 U.S. 100, 129–130, 133, 24 S.Ct. 797, 804–805, 806, 49 L.Ed. 114 (1904); *Brooks v. State, supra,* 299 Md. at 153–155, 472 A.2d 981; *Block v. State, supra,* 286 Md. at 268, 407 A.2d 320; *Pugh v. State, supra,* 271 Md. at 705–706, 319 A.2d 542; *State v. Shields,* 49 Md. 301, 303 (1878). This is true even if the acquittal is based upon an error of law or an incorrect resolution of the facts. *E.g., Smalis v. Pennsylvania, supra,* 106 S.Ct. at 1748 n. 7 and n. 8; *Arizona v. Rumsey, supra,* 467 U.S. at 211, 104 S.Ct. at 2310; *United States v. Scott, supra,* 437 U.S. at 91, 98 S.Ct. at 90; *Sanabria v. United States, supra,* 437 U.S. at 71, 77–78, 98 S.Ct. at 2182, 2185–2186; *Pugh v. State, supra,* 271 Md. at 705, 319 A.2d 542; *State v. Shields, supra,* 49 Md. at 303.

■ The rule according finality to an acquittal on the merits is ordinarily applicable regardless of the nature of the postacquittal criminal proceedings. Contrary to the view of the Court of Special Appeals, the rule is not limited to the situation where the government attempts to institute a wholly new prosecution on the same charge after a judgment in an earlier prosecution. Rather, the acquittal on the merits terminates the initial jeopardy on a charge, normally precluding any type of further criminal proceedings on the same charge or, in some instances, on a related charge. In this respect, the double jeopardy effect of an acquittal is somewhat different than that of a conviction. *See Smalis v. Pennsylvania, supra,* 106 S.Ct. at 1749 ("subjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause"); *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 1814, 80 L.Ed.2d 311 (1984) ("Acquittals, unlike convictions, terminate the initial jeopardy. This

is so whether they are 'express or implied by a conviction on a lesser included offense.' "); *United States v. Scott, supra,* 437 U.S. at 91, 98 S.Ct. at 2194 ("A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict ... terminates the prosecution.... [The] disparity [between a conviction and an acquittal] ... is explainable by reference to the underlying purposes of the Double Jeopardy Clause. As *Kepner* and *Fong Foo* illustrate, the law attaches particular significance to an acquittal"); *United States v. Martin Linen Supply Co., supra,* 430 U.S. at 570, 97 S.Ct. at 1354 (grant of motion for "judgments of acquittal ... act[s] to terminate a trial in which jeopardy has ... attached"); *Fong Foo v. United States, supra,* 369 U.S. 141, 82 S.Ct. 671 (acquittal during government's case terminated the prosecution and precluded writ of mandamus from appellate court); *Kepner v. United States, supra,* 195 U.S. at 130, 24 S.Ct. at 805 ("former jeopardy includes one who has been acquitted by a verdict duly rendered, although no judgment be entered on the verdict"); *Ward v. State,* 290 Md. 76, 82, 427 A.2d 1008 (1981) (where there is a mid-trial acquittal, "not only would a [new] second trial be precluded but a continuation of the original trial on the [same] offense, after an acquittal of that offense, would be deemed a second trial and would also be prohibited").

The theory of the Court of Special Appeals, that an acquittal on the merits is no bar to a continuation of the same trial on the same charge, was very recently rejected by the Supreme Court in *Smalis v. Pennsylvania, supra,* 106 S.Ct. at 1749, reversing *Com. v. Zoller,* 507 Pa. 344, 490 A.2d 394 (1985). In *Smalis* a husband and wife who owned a building were prosecuted for various crimes in connection with a fire that burned the building and killed two tenants. The charges included murder, voluntary manslaughter, causing a catastrophe, as well as other charges. At the close of the prosecution's case, the trial court sustained a demurrer to the charges of murder, voluntary manslaughter and causing a catastrophe, on the ground that the

prosecution's evidence was insufficient. The prosecution then took an appeal, which was apparently allowed under Pennsylvania law. The Superior Court quashed the appeal on double jeopardy grounds, but the Supreme Court of Pennsylvania held that the Fifth Amendment's Double Jeopardy Clause did not preclude the appeal. The Supreme Court of Pennsylvania, after stating "that the real function of the Double Jeopardy Clause is to safeguard acquittals," 490 A.2d at 399, went on to hold "that a demurrer is not the functional equivalent of an acquittal," *id.* at 401.

The Supreme Court of the United States in *Smalis* unanimously reversed on double jeopardy grounds. Initially, the Supreme Court held that the trial court's action was an acquittal, saying (106 S.Ct. at 1748):

"What the demurring defendant seeks is a ruling that as a matter of law the State's evidence is insufficient to establish his factual guilt. Our past decisions, which we are not inclined to reconsider at this time, hold that such a ruling is an acquittal under the Double Jeopardy Clause."

The Commonwealth of Pennsylvania, seeking to affirm the judgment on an alternate ground, then made an argument like that adopted by the Court of Special Appeals in the instant case. The Commonwealth contended that its appeal would not lead to a second trial but would merely result in a continuation of the same trial on the murder, manslaughter and catastrophe charges. The Supreme Court rejected the argument, making it clear that, where there is an acquittal on the merits, the Fifth Amendment bars any type of postacquittal factfinding proceedings going to guilt or innocence of the charge. The Court thus explained (*id.* at 1749):

"The Commonwealth argues that its appeal is nonetheless permissible under *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984), because resumption of petitioners' bench trial following a reversal on appeal would simply constitute 'continuing jeopardy.' Brief for Respondent 87–88. But *Lydon* teaches that '[a]cquittals, unlike convictions, ter-

minate the initial jeopardy.' 466 U.S., at 308, 104 S.Ct., at 1813. Thus, whether the trial is to a jury or to the bench, subjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause. *Arizona v. Rumsey*, 467 U.S. 203, 211–212, 104 S.Ct. 2305, 2310–11, 81 L.Ed.2d 164 (1984).

"When a successful postacquittal appeal by the prosecution would lead to proceedings that violate the Double Jeopardy Clause, the appeal itself has no proper purpose. Allowing such an appeal would frustrate the interest of the accused in having an end to the proceedings against him. The Superior Court was correct, therefore, in holding that the Double Jeopardy Clause bars a postacquittal appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.' *Martin Linen, supra*, 430 U.S., at 570, 97 S.Ct., at 1354."

This Court's decisions similarly compel a rejection of the Court of Special Appeals' position that the double jeopardy prohibition, apart from multiple punishment considerations, is never implicated in the context of a single trial. Thus, in *Pugh v. State, supra*, 271 Md. 701, 319 A.2d 542, the defendant was being tried nonjury on charges of possessing and distributing narcotics. After the presentation of evidence and closing arguments of counsel, the trial judge summarized the evidence and rendered a not guilty verdict on the distribution charge, finding the State's evidence insufficient. The prosecuting attorney then indicated that he had something further to say; the court agreed to hear postverdict argument; and the prosecutor made an argument as to why the evidence was sufficient. The trial court, stating that "I see what you mean" and that "I was thinking of it in a different way," reconsidered the not guilty verdict, rendered a guilty verdict on the distribution charge, and imposed a twelve year sentence on that charge.

271 Md. at 704, 319 A.2d 542. This Court reversed, holding that the reconsideration and conviction, after the acquittal, was prohibited by both the Fifth Amendment and Maryland common law principles. We pointed out that the reconsideration and conviction in *Pugh* was "barred by what at common law was the plea of *autrefois acquit,*" and we quoted *State v. Shields, supra,* 49 Md. at 303, that " 'the verdict of acquittal can never afterward, on the application of the prosecutor ... be set aside,' " *id.* at 705.

In *Block v. State, supra,* 286 Md. 266, 407 A.2d 320, the defendant was tried in the District Court on a charge of shoplifting, and, at the conclusion of the evidence, the trial judge rendered a guilty verdict but delayed sentencing. About a month later, upon the defendant's motion, the trial judge stated in open court that he had reconsidered the matter, and he rendered a not guilty verdict. The following month, the State filed a motion to reconsider, and the trial judge struck the acquittal and ordered that the defendant stand for a new trial. In reversing, we held that the trial judge's action in setting aside the acquittal and ordering a new trial violated both the Fifth Amendment and the Maryland common law, on the ground that "a not-guilty ... verdict is a bar to further criminal proceedings on the same charge." *Id.* at 274, 407 A.2d 320. *See United States v. Martin Linen Supply Co., supra,* 430 U.S. 564, 97 S.Ct. 1349, where the Supreme Court reached the same conclusion under the Fifth Amendment on somewhat analogous facts.

The case most similar to the one now before us is *Brooks v. State, supra,* 299 Md. 146, 472 A.2d 981. The defendant Brooks was tried before a jury on charges of robbery with a deadly weapon, conspiracy to commit armed robbery, and carrying a deadly weapon with intent to injure. At the close of the State's case, the trial court granted the defendant's motion for judgment of acquittal on the charge of conspiracy to commit armed robbery, holding that the evidence was insufficient to show a conspiracy. Following the court's ruling on other motions for judgment of acquittal,

the State moved that the court reconsider its decision on the conspiracy charge, and the court reserved ruling on the State's motion. Thereafter, at the end of the defense case, the trial judge decided that he would allow the conspiracy charge to go to the jury, and, reversing himself, he denied the motion for judgment of acquittal on that charge. The judge's jury instructions included instructions on the conspiracy charge. Brooks was convicted and sentenced on all three charges. In reversing the conspiracy conviction, Judge Orth for this Court characterized what happened as follows (299 Md. at 154–155, 472 A.2d 981):

> "Contrary to what the trial judge suggested and the State now argues, the grant of the motion was not 'merely preliminary.' It was effective as a final disposition of the conspiracy charge. The State presents the notion that the ruling was 'one of law, not fact.' But, when the court granted the motion, evidence relating to the conspiracy was before the court. Defense counsel had argued that the evidence was not legally sufficient to prove the offense. The State did not dispute this at the time but simply submitted. The court granted the motion. To assert that the ruling was 'one of law, not fact,' is not only specious but also captious. It is obvious that the grant of the motion was predicated, as it had to be, on a review by the judge with respect to the sufficiency of the evidence, and that he found that it was not legally sufficient to sustain a conviction. Nor can it be said that the grant of the motion for judgment of acquittal was inadvertent or a slip of the tongue. The acquittal here of necessity 'represented an intended decision based upon the judge's view that the prosecution had failed to prove' that Brooks conspired to commit armed robbery."

In holding that the conspiracy conviction violated Maryland common law double jeopardy principles, the Court in *Brooks* expressly rejected the notion that the double jeopardy prohibition is not implicated when there is only a single trial (*id.* at 155, 472 A.2d 981, emphasis supplied):

"The grant of the motion for judgment of acquittal was a bar to further criminal proceedings on the same charge. *Block*, 286 Md. at 271–274, 407 A.2d 320; *Pugh*, 271 Md. at 707, 319 A.2d 542. *See Parojinog v. State*, 282 Md. 256, 262–265, 384 A.2d 86 (1978). Although Brooks was acquitted on the charge by the grant of his motion for judgment of acquittal, he was, nevertheless, tried on that charge by the submission of it to the jury. *It is immaterial that he was tried and convicted in the continuing proceeding.* Brooks is entitled to stand acquitted on the conspiracy charge. We need not apply the federal constitution's Fifth and Fourteenth Amendment guarantee against double jeopardy to reach this conclusion. Another trial was barred here by the common law prohibition against double jeopardy recognized in this State. It follows that the trial judge erred in striking his grant of the motion for judgment of acquittal and thereafter denying the motion, and in his actions resulting therefrom, namely, permitting the offense to go to the jury and instructing the jury with respect to that offense."

The only distinction between the present case and *Brooks* is that, here, the postacquittal trial proceedings were on a different count and a greater charge. This does not, under the circumstances, render inapplicable the double jeopardy prohibition. The critical question is whether the trial court's action at the close of the State's case constituted " ' "a resolution, correct or not, of some or all of the factual elements of the offense charged." ' " *Sanabria v. United States, supra,* 437 U.S. at 71, 98 S.Ct. at 2183, quoting *Lee v. United States,* 432 U.S. 23, 30 n. 8, 97 S.Ct. 2141, 2145 n. 8, 53 L.Ed.2d 80 (1977), quoting *United States v. Martin Linen Supply Co., supra,* 430 U.S. at 571, 97 S.Ct. at 1355. A critical factual element of the felony murder charge was the commission of the attempted armed robbery, and the trial court's decision at the close of the State's case resolved this in favor of the defendant Wright.

Moreover, in determining the applicability of the double jeopardy prohibition in a particular situation, a court must

primarily examine the substance of what occurred and not simply the procedural form. *United States v. Scott, supra*, 437 U.S. at 96–97, 98 S.Ct. at 2196–2197; *Sanabria v. United States, supra*, 437 U.S. at 66, 98 S.Ct. at 2179; *United States v. Martin Linen Supply Co., supra*, 430 U.S. at 571–572, 97 S.Ct. at 1354–1355. When the trial court in the case at bar ruled that the State's evidence was insufficient to establish that Wright committed the attempted robbery and acquitted Wright of attempted robbery, the trial court in effect acquitted Wright of felony murder. The trial court recognized this at the time, for it denied the motion for judgment of acquittal on the murder count only because that count also embodied a charge of willful, deliberate and premeditated murder under Art. 27, § 407. The trial court again recognized this at the conclusion of the trial when it stated that "felony murder ... was not in the case at the end of the State's case." Furthermore, at the end of the State's case, the trial court had specifically stated that Wright need not put on a defense with respect to attempted robbery. What happened at the close of the State's case is no different in substance than if the murder charge had been made in two separate counts and the attempted robbery charge in a third count, with the first murder count embodying a charge of willful, deliberate and premeditated murder under Art. 27, § 407, and the second murder count embodying a charge of felony murder under Art. 27, § 410, and the motion for judgment of acquittal had been granted as to both the felony murder count and the attempted robbery count. In the latter situation, a subsequent conviction at the same trial for felony murder would clearly be proscribed by the previously discussed cases. The result should not be different because the alternate bases of the murder prosecution were embodied in one count rather than two counts.

Finally, the Supreme Court has specifically held that an acquittal at the close of the government's case, because of insufficient evidence of an element of an offense, presents a double jeopardy bar to further trial proceedings either on

the same count or on a different count requiring proof of the same element. In *Sanabria v. United States, supra,* Sanabria was indicted in a single count for a violation of a federal statute proscribing an illegal gambling business, 18 U.S.C. § 1955, with the government alleging two forms of the violation, numbers betting and horse race betting. At the close of the government's case, Sanabria's counsel filed a motion for judgment of acquittal which was denied. After the defense rested, the trial judge stated that he was reversing himself. The judge granted the motion for judgment of acquittal on the grounds that there was insufficient evidence that Sanabria was engaged in horse race betting and that the indictment did not properly allege numbers betting because it referred to a state statute which did not cover numbers betting. The trial judge thereafter denied the government's motion to reconsider, although indicating that he would reconsider and permit the trial to proceed if he were incorrect as to the alleged deficiency in the indictment regarding numbers betting. The United States Court of Appeals reversed on the grounds that the trial court erred with respect to the allegation of numbers betting and that, since there was no acquittal because of insufficient evidence of numbers betting, the trial could proceed on that basis of criminal liability. The United States Supreme Court reversed, holding that the acquittal constituted a double jeopardy bar to further trial proceedings.

Initially, the Supreme Court in *Sanabria* emphasized the final nature of an acquittal (437 U.S. at 64, 98 S.Ct. at 2178):

"[W]e must immediately confront the fact that petitioner was acquitted on the indictment. That ' "[a] verdict of acquittal ... [may] not be reviewed ... without putting [the defendant] twice in jeopardy, and thereby violating the Constitution," ' has recently been described as 'the most fundamental rule in the history of double jeopardy jurisprudence.' *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571 [97 S.Ct. 1349, 1354, 51 L.Ed.2d 642] (1977), quoting *United States v. Ball,* 163 U.S. 662, 671, [16 S.Ct. 1192, 1195, 41 L.Ed. 300] (1896). The funda-

mental nature of this rule is manifested by its explicit extension to situations where an acquittal is 'based upon an egregiously erroneous foundation.' *Fong Foo v. United States*, 369 U.S. 141, 143 [82 S.Ct. 671, 672, 7 L.Ed.2d 629] (1962); see *Green v. United States*, 355 U.S. 184, 188 [78 S.Ct. 221, 223, 2 L.Ed.2d 199] (1957)."

The Supreme Court went on to disagree with the view of the government and the Court of Appeals that the statutory offense and the indictment embodied two discrete bases of criminal liability, *id.* at 65–69, 98 S.Ct. 2179–81. The Court went on to hold that even if the case be viewed as containing two counts, with the acquittal being on only one of those counts, the result would not be different. The Court thus stated (*id.* at 71–73, 98 S.Ct. at 2182–84):

"We have recently defined an acquittal as ' "a resolution, correct or not, of some or all of the factual elements of the offense charged." ' *Lee v. United States*, 432 U.S., at 30 n. 8, [97 S.Ct., at 2146 n. 8], quoting *United States v. Martin Linen Supply Co., supra,* [430 U.S.], at 571 [97 S.Ct., at 1355]. Petitioner was found not guilty for a failure of proof on a key 'factual element of the offense charged': that he was 'connected with' the illegal gambling business.... Had the Government charged only that the business was engaged in horse betting and had petitioner been acquitted, his acquittal would bar any further prosecution for participating in the *same* gambling business during the same time period on a numbers theory. That the trial court disregarded the Government's allegation of numbers betting does not render its acquittal on the horse-betting theory any less an acquittal on the 'offense' charged....

"While recognizing that only a single violation of the statute is alleged under either theory, the Government nevertheless contends that separate counts would have been proper, and that an acquittal of petitioner on a horse-betting count would not bar another prosecution on a numbers count. Brief for United States 33. Although there may be circumstances in which this is true, petition-

er here was acquitted for insufficient proof of an element of the crime which both such counts would share—that he was 'connected with' the single gambling business.... This finding of fact stands as an absolute bar to any further prosecution for participation in that business." In light of the above holding, it is clear that the acquittal of the defendant Wright on the attempted robbery count was a bar to further criminal proceedings on a felony murder theory sharing a common essential element.

Both the opinion of the Court of Special Appeals (57 Md.App. at 384–385, 470 A.2d 361) and the State's argument rely heavily upon *Bynum v. State*, 277 Md. 703, 357 A.2d 339, *cert. denied*, 429 U.S. 899, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976). Such reliance is misplaced. In *Bynum* the defendant was charged with, *inter alia*, robbery with a deadly weapon and robbery, both charges based upon the same alleged conduct. The undisputed evidence at trial showed "conclusively ... that a robbery had been committed and that a deadly weapon, a gun, had been used in the commission of that robbery...." 277 Md. at 704, 357 A.2d 339. At the conclusion of all of the testimony, the defendant moved for judgment of acquittal, and the court denied the motion. Thereafter, in light of the evidence, the prosecution entered a nolle prosequi to the count charging simple robbery. The count charging robbery with a deadly weapon was submitted to the jury, and a guilty verdict was returned. The Court of Special Appeals and this Court affirmed the armed robbery conviction, rejecting the defendant's argument that, under double jeopardy principles, the nolle prosequi of the simple robbery charge precluded the submission of the armed robbery charge to the jury and the guilty verdict on that charge. This Court held that, although the nolle prosequi of the robbery charge would have precluded a subsequent separate prosecution for robbery or armed robbery (*id.* at 705–707, 357 A.2d 339), there was no violation of the double jeopardy prohibition under the circumstances, where the defendant was subjected to a "single" prosecution, trial and verdict (*id.* at 708, 357 A.2d 339).

*Bynum* is clearly distinguishable from the case at bar. First, a nolle prosequi, even after jeopardy attaches, is not an acquittal of an offense, and the considerations which generally preclude the institution of a second prosecution with regard to an offense, where the same offense had been nol prossed after the attachment of jeopardy at an earlier trial, are not entirely the same as the considerations underlying the finality of an acquittal on the merits. *See* the discussion in *Ward v. State, supra,* 290 Md. 76, 427 A.2d 1008. Moreover, as the Court pointed out in *Bynum,* what happened there did not violate the "double jeopardy polic[y] ... that guilt should be established only by proving the elements of the offense to a single" factfinder (277 Md. at 707–708, 357 A.2d 339); the Court further pointed out that the defendant Bynum was subjected only to a single "verdict." In the instant case, however, after the prosecution's case, there was a judicial determination that the prosecution had failed to present sufficient evidence of an attempted robbery by the defendant Wright, and a verdict of acquittal with regard to the matter was entered. The defendant Wright was then required to run the gauntlet further on the question of whether he committed the attempted robbery, and he was subjected to a second resolution of the matter. There were two verdicts on the issue of whether he committed the attempted armed robbery, the first being the acquittal by the trial judge and the second being the conviction of felony murder by the jury.

The State also relies upon language in the *Bynum* opinion that " '[t]he same result would have obtained had the court, rather than the prosecutor, dismissed the robbery charge by granting partial judgment of acquittal.' 277 Md. at 709 [357 A.2d 339]." (State's brief, p. 5). The State, however, quotes this language totally out of context. The entire passage, of which the quoted language is a part, is as follows (277 Md. at 708–709, 357 A.2d 339):

"There can be little doubt as to the reason for entering the *nolle prosequi* in this case. The state clearly was not abandoning the robbery count because it lacked proof of

the offense; to the contrary, it was evidently believed that robbery and more, robbery with a deadly weapon, was proven, a belief borne out by the verdict of the jury. The purpose in abandoning the robbery charge was to remove from the jury's consideration a charge inconsistent in fact with the uncontradicted evidence adduced at trial which showed that a robbery involving the use of a deadly weapon took place, the only genuine issue being the extent of the defendant's participation. The removal from consideration by the jury of the lesser offense had the salutary effect of clarifying the issues to be decided, an effect which could only accrue to the fairness of the trial. The same result would have obtained had the court, rather than the prosecutor, dismissed the robbery charge by granting partial judgment of acquittal."

The opinion in *Bynum* clearly was not referring to an acquittal by the court based on the insufficiency of the prosecution's proof. In fact, the Bynum opinion was contrasting the situation then before it with the situation where the prosecution's proof was lacking.

As the above language from *Bynum* indicates, an acquittal on one count charging an offense would not in all cases preclude the continuation of the trial on another count charging what is deemed the same offense. The situation in *Bynum* is one example. Another is where an acquittal on a greater count would not logically affect the continuation of the trial on a lesser included count. Thus an acquittal on a felony murder count, on the ground that the State failed to prove a homicide, would not prevent the continuation of the trial on a count charging the underlying felony.[4] The determining factor is ordinarily whether or not the acquittal on one count represented a factual resolution, favorable to the defendant, of an essential element

---

4. The institution of an entirely new prosecution for the lesser included offense, following an acquittal or conviction for the greater offense, would, however, normally be precluded by double jeopardy principles. *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Thomas v. State,* 277 Md. 257, 353 A.2d 240 (1976).

embodied in the other count. *Sanabria v. United States,*
*supra,* 437 U.S. at 71–73, 98 S.Ct. at 2182–2184.

The Court of Special Appeals also relied upon the rule
that jury verdict consistency is "not mandated by our law"
and furnishes no ground for reversal. 57 Md.App. at 385–
386, 470 A.2d 361. While agreeing with Wright's argument
that the judgment of acquittal on the underlying attempted
robbery and the conviction of felony murder "were incon-
sistent," the Court of Special Appeals responded that "it is
immaterial." *Id.* at 385, 470 A.2d 361. The short answer to
the Court of Special Appeals' reliance is that we are not in
this case dealing with inconsistent action by a jury. Rather,
the inconsistency was on the part of the trial court, in
granting a motion for judgment of acquittal as to the
underlying felony but submitting the felony murder theory
to the jury. While inconsistent verdicts by a jury are
normally tolerated, inconsistent verdicts by the court are
not ordinarily permitted as a matter of Maryland common
law. *Shell v. State,* 307 Md. 46, 512 A.2d 358 (1986);
*Johnson, Etc. v. State,* 238 Md. 528, 541–542, 209 A.2d 765
(1965).

■ Moreover, we recognize that, as a general principle,
inconsistent verdicts on different counts at a nonjury trial
are not precluded by the federal constitution, at least when
the guilty verdict "is supported by sufficient evidence and is
the product of a fair trial." *Harris v. Rivera,* 454 U.S. 339,
344, 102 S.Ct. 460, 463, 70 L.Ed.2d 530 (1981). *See Dunn v.*
*United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356
(1932); *Dealy v. United States,* 152 U.S. 539, 14 S.Ct. 680,
38 L.Ed. 545 (1894); *Shell v. State,* 307 Md. 46, 57 n. 6, 512
A.2d 358, 363 n. 6 (1986). Notwithstanding the ordinary
federal constitutional inconsistent verdict rule, we doubt
that a conviction for felony murder, after an acquittal of the
underlying felony on the ground that the State's proof was
insufficient, and after the trial judge expressly stated that
"there is not sufficient evidence to require the Defendants
to put on a defense with respect to the" underlying felony,

could be squared with federal double jeopardy or due process principles in light of the language in *Harris v. Rivera, supra;* and the opinions in *Smalis v. Pennsylvania, supra; Sanabria v. United States, supra; United States v. Martin Linen Supply Co., supra,* and other cases.[5]

■ We conclude, therefore, that both under the Double Jeopardy Clause of the Fifth Amendment and, independently, under Maryland common law double jeopardy principles, the defendant Wright's conviction for felony murder must

---

**5.** The State also relies upon *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). In that case, the defendant was charged with murder, aggravated robbery, involuntary manslaughter, and grand theft, all growing out of a single incident of taking property from an apartment and killing the apartment owner. Before the State had an opportunity to put on its case, the trial judge accepted, over the State's objection, the defendant's guilty pleas to the lesser offenses of involuntary manslaughter and grand theft. The trial judge then dismissed the murder and robbery charges on the ground that, because of the guilty pleas to the lesser charges, the Fifth Amendment's Double Jeopardy Clause precluded further prosecution on the murder and robbery charges. As the Supreme Court's opinion in *Johnson* makes clear, that case is entirely distinguishable from the case at bar. First, *Johnson* involved a mid-trial conviction, not an acquittal, and, as previously discussed, there is a substantial difference between the preclusive effect of a conviction and the preclusive effect of an acquittal. In holding that the trial court erred, and in rejecting the defendant's argument that prosecution at the same trial on the greater charges would violate the double jeopardy prohibition against multiple prosecutions, the Supreme Court "declined to hold" that "a determination of *guilt and punishment* on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded." 467 U.S. at 501, 104 S.Ct. at 2542, emphasis supplied. The Court in *Johnson* specifically distinguished the situation before it from other situations, such as where there is an "implied acquittal." *Id.* at 501–502, 104 S.Ct. at 2542–2543. Another major distinction between *Johnson* and the case at bar is that in *Johnson* the State never had an opportunity to present its evidence against the defendant. As the Supreme Court pointed out, "ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws." *Id.* at 502, 104 S.Ct. at 2542. In the instant case, the State had "one full and fair opportunity" to prove that the defendant Wright committed an attempted felony, and the State's evidence was held insufficient to so prove.

be reversed.[6] In addition, because his conviction for using a handgun in the commission of a felony or crime of violence was premised upon his having committed felony murder, that conviction must also be reversed. On the other hand, the guilty verdict on the charge of possessing a handgun was entirely proper. While the trial judge did not impose a sentence on this conviction, because of the sentence imposed on the greater handgun offense, it would now be appropriate for Wright to be sentenced on the conviction of possessing a handgun. We shall order a remand for that purpose.

## II.

The specific facts forming the grounds for the defendant Coley's contention are as follows. On the night he was arrested, Coley was brought to the Baltimore City Police Headquarters shortly before 1:00 a.m. Sergeant Gerard Brandner advised him of his *Miranda*[7] rights, which he waived. Coley gave a written statement denying all knowledge of the A & P shooting, asserting an alibi, and naming his mother and cousin as alibi witnesses. According to the police, he signed an exculpatory statement at 2:44 a.m. The police immediately checked his story, sending a car for Coley's mother and cousin. Interviews with Coley's mother and cousin at the police station exploded Coley's alibi and implicated him in the A & P incident.

The police advised Coley that he would be charged with homicide and asked him again for a statement. Next, Coley's mother was allowed to talk to him. She then asked to speak to the State's Attorney, and Assistant State's Attorney Howard Gersh arrived between 4:00 and 4:30 a.m. He spoke with Coley's mother; she conferred again with

---

6. In light of our holding, we need not reach Wright's collateral estoppel contentions.

7. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

her son, and from these discussions emerged a plea agreement.

The gist of the agreement was that Coley promised to give a full statement and testify before the grand jury and at trial in return for the State's promise to accept a plea of guilty to second degree murder. The plea agreement stated that if Coley broke his promise, the State could use any of his statements against him. Coley, his mother and the State's Attorney signed the plea agreement at 6:00 in the morning. The same morning Coley testified before a grand jury.

Later Coley reneged on his part of the plea agreement, elected to stand trial on a not guilty plea, and moved to suppress all of his statements on grounds of involuntariness. At the pretrial hearing on the suppression motion, Coley conceded that the police had given him adequate *Miranda* warnings. He argued, however, that the State had induced him to confess by agreeing to drop the first degree murder charge and accept a plea to second degree murder. The trial court denied Coley's motion, and, at trial, the court admitted Coley's plea agreement, confession and grand jury testimony despite repeated objections from Coley.

In arguing that the rescinded plea agreement and confession were improperly admitted into evidence, Coley relies upon the Maryland inducement rule set forth in *Hillard v. State, supra,* 286 Md. 145, 406 A.2d 415, and other cases.

The accused in *Hillard* had been arrested in connection with an armed robbery and murder. While in custody, and with his lawyer present, he gave a seven page statement to the police. The trial judge found that the police detective had told Hillard, among other things, that

"if you are telling me the truth about your involvement in the occurrence, I will go to bat for you to the extent that I will tell the State's Attorney's office and the Court, number one, that you have cooperated, number two, you have told me the truth, and number three, I believe you

were not knowledgeable as far as the murder was concerned." 286 Md. at 149, 153, 406 A.2d 415.

The trial judge ruled that the resulting confession was admissible, but this Court reversed. After reviewing numerous earlier decisions of this Court, we held in *Hillard* that the confession was involuntary because it resulted from an improper inducement. Judge Digges stated for the Court as follows (286 Md. at 153, 406 A.2d 415, emphasis supplied):

"From this line of cases, it clearly emerges that under Maryland criminal law, independent of any federal constitutional requirement, if an accused is told, or it is implied, that making an inculpatory statement will be to his advantage, in that he will be given help or some special consideration, and he makes remarks in reliance on that inducement, his declaration will be considered to have been involuntarily made and therefore inadmissible. In examining the facts of this case with this principle in mind, there can be little doubt that Detective Jones *made an improper promise to the defendant in exchange for his statement.*"

Later, in *Stokes v. State*, 289 Md. 155, 423 A.2d 552 (1980), we held that the defendant's inculpatory statement concerning the location of narcotics should not have been admitted into evidence. There, the inculpatory statement had been induced by the representation of police officers, in executing a search warrant, " 'that if he [the defendant] would produce the narcotics, his wife would not be arrested.' " 289 Md. at 157, 423 A.2d 552. The Court explained (*id.* at 160–161, 423 A.2d 552):

"The State's case is ... reduced to dependence on an argument that 'a promise to benefit a relative is not that type of advantage, help or special consideration to an accused which is contemplated by *Hillard.*' Responding to this contention with respect to the reach of *Hillard*, we make clear here, even if beclouded until now, that the mandate of that case encompasses the issue presented in this case and is dispositive of it. The rule in *Hillard*

announces that a statement is rendered involuntary if it is induced by any official promise which redounds to the benefit or desire of the defendant. And this necessarily includes a promise not to harm (physically or emotionally) a near relative with whom the defendant naturally has a close bond of affection. . . .

"That principle of Maryland criminal law which excludes an inculpatory statement induced by 'any promise of favor or threat of punishment,' *Hillard, supra* [286 Md.] at 154, 406 A.2d at 420, is, perhaps, more extensive than those of other jurisdictions. See, *e.g., Biscoe v. State,* 67 Md. 6, 7–10, 8 A. 571, 572–573 (1887) (defendant's confession given after an official urged 'that it would be better for him to tell the truth' found to be involuntary). Nevertheless, we find substantial agreement that a promise not to arrest a near relative of the defendant, or a threat to do so, constitutes a form of inducement which will render a resulting statement involuntary."

The earliest decision of this Court setting forth the rule is *Nicholson v. State,* 38 Md. 141 (1873). There, the defendant claimed that he had been induced to testify by a detective who, he alleged, urged him to "let it out before [your co-defendant] squeals, for if you do not, [he] will squeal before you, and you will get the worse of it." 38 Md. at 152. Pointing out "that the *onus* is on the prosecutor, to show affirmatively, that the confession proposed to be offered was not made in consequence of an improper inducement," the Court stated that

"if the confession of the appellant had been induced by any threat of harm, or promise of worldly advantage held out to him by [the detective], or by his authority, or in his presence and with his sanction, it ought to be excluded." *Id.* at 153.

In *Biscoe v. State,* 67 Md. 6, 8 A. 571 (1887), the defendant was put in jail, pressed to confess several times, and then told by the committing magistrate "that it would be better for him to tell the truth, and have no more trouble

about it." The Court held the resulting confession inadmissible, stating that "it was procured by the influence of another under a hope of favor or advantage if made, or fear of harm or disadvantage of some kind if withheld." 67 Md. at 7, 8 A. 571.

In *Watts v. State,* 99 Md. 30, 57 A. 542 (1904), the defendant was persuaded to confess by a newspaper reporter at the jail, in the presence of the Sheriff and Warden. The reporter said that " 'it would be possibly better for him if he would make a clean statement, so that it would not appear erroneously in the papers; that the papers would get it anyway, and as my paper was an evening paper, the correct statement would come out first.' " 99 Md. at 35, 57 A. 542. Citing *Nicholson, supra,* the Court held the resulting confession inadmissible.

In *Dobbs v. State,* 148 Md. 34, 129 A. 275 (1925), the Court had occasion to apply the inducement rule to conduct of a State's Attorney, who told the defendant: " 'Tell the truth about it. You've got nothing to fear if you tell the truth, and you weren't in it.' " 148 Md. at 61, 129 A. 275. The Court reversed the convictions of Dobbs and his co-defendants, finding, *inter alia,* an improper inducement.

In *Lubinski v. State,* 180 Md. 1, 22 A.2d 455 (1941), the defendant claimed that the police officer told him that he need not make an admission, but that if he did, "it will help you a lot." 180 Md. at 4, 22 A.2d 455. The officer and a subordinate denied having said this. This Court indicated that if the admission had been obtained as claimed by the defendant, it would have been inadmissible. *Id.* at 6, 22 A.2d 455.

Other cases applying the Maryland inducement rule include *Streams v. State,* 238 Md. 278, 208 A.2d 614 (1965) (police promised to try to get the defendant placed on probation if he talked, but otherwise would "throw the book" at him and get him a longer sentence, and the Court held that the resulting statements were involuntary); *Kier v. State,* 213 Md. 556, 132 A.2d 494 (1957) (defendant was

questioned by two police officers while he was standing nude and being examined by a doctor, who was taking skin scrapings from his genital area with a scalpel; the doctor's words suggesting that he would leave if the defendant made a statement were held to be an inducement rendering the confession inadmissible); *Edwards v. State,* 194 Md. 387, 71 A.2d 487 (1950) (the police showed the defendant a letter from a convict to the police, conveying the convict's regret that the convict had not confessed, and the Court held the resulting confession inadmissible). *See also Abbott v. State,* 231 Md. 462, 190 A.2d 797 (1963).

■ Under the principle applied in the above cases, if the police or the Assistant State's Attorney had simply told Coley that a confession and guilty plea to second degree murder would result in his not being prosecuted for first degree murder, and if Coley had confessed because of that inducement, his confession would be deemed involuntary and inadmissible at his trial. The instant case, however, involves something quite different. The situation with regard to Coley is significantly distinguishable from that involved in the above cited cases.

Here, the inducement by the State took the form of promises under a negotiated plea bargain agreement, made in exchange for Coley's promises under that agreement. The agreement was sanctioned and regulated by Maryland Rule 4–243.[8] The mutual promises were specifically autho-

---

8. Maryland Rule 4–243 provides as follows:
    "Rule 4–243.  PLEA AGREEMENTS.
    (a) Conditions for Agreement.—The defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendere on any proper condition, including one or more of the following:
        (1) That the State's Attorney will amend the charging document to charge a specified offense or add a specified offense, or will file a new charging document;
        (2) That the State's Attorney will enter a nolle prosequi pursuant to Rule 4–247(a) or move to mark certain charges against the defendant stet on the docket pursuant to Rule 4–248(a);

(3) That the State's Attorney will agree to the entry of a judgment of acquittal on certain charges pending against the defendant;

(4) That the State will not charge the defendant with the commission of certain other offenses;

(5) That the State's Attorney will recommend, not oppose, or make no comment to the court with respect to a particular sentence, disposition, or other judicial action;

(6) That the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to section (c) of this Rule.

(b) Recommendations of State's Attorney on Sentencing.—The recommendation of the State's Attorney with respect to a particular sentence, disposition, or other judicial action made pursuant to subsection (a)(5) of this Rule is not binding on the court. The court shall advise the defendant at or before the time the State's Attorney makes a recommendation that the court is not bound by the recommendation, that it may impose the maximum penalties provided by law for the offense to which the defendant pleads guilty, and that imposition of a penalty more severe than the one recommended by the State's Attorney will not be grounds for withdrawal of the plea.

(c) Agreements of Sentence, Disposition, or Other Judicial Action.—

(1) *Presentation to the Court.*—If a plea agreement has been reached pursuant to subsection (a)(6) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.

(2) *Not Binding on the Court.*—The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

(3) *Approval of Plea Agreement.*—If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

(4) *Rejection of Plea Agreement.*—If the plea agreement is rejected, the judge shall inform the parties of this fact and advise the defendant (A) that the court is not bound by the plea agreement; (B) that the defendant may withdraw the plea; and (C) that if the defendant persists in the plea of guilty or nolo contendere, the sentence or other disposition of the action may be less favorable than the plea agreement. If the defendant persists in the plea, the court may accept the plea of guilty only pursuant to Rule 4–242(c) and the plea of nolo contendere only pursuant to Rule 4–242(d).

(5) *Withdrawal of Plea.*—If the defendant withdraws the plea and pleads not guilty, then upon the objection of the defendant or the State made at that time, the judge to whom the agreement was

rized by Rule 4–243. The State neither rescinded nor breached the agreement. Finally, the agreement specified that if Coley reneged, his inculpatory statements could be used against him at trial. None of the Maryland cases relied upon involved circumstances like these.

Moreover, in the Maryland cases from *Nicholson* through *Hillard* and *Stokes*, the Court took the position that a promise or inducement by the State, in order to obtain a confession or causing a confession, was an "improper" inducement. It would be anomalous, however, to hold that the State's actions were "improper" when they are expressly authorized by law (*i.e.*, Rule 4–243) and when the State neither rescinds nor breaches the plea bargain agreement. In addition, subsection (d) of Rule 4–243 provides for judicial inquiry on the record into, *inter alia*, the voluntariness of the defendant's plea bargain agreement. Obviously the rule does not contemplate that the defendant's promises be deemed per se involuntary, under *Hillard* and other cases, on the ground that they were induced by the State's promises.

The defendant Coley, however, argues on "policy" grounds that the *Hillard* holding should be extended to the present situation in order to encourage plea bargaining. He relies on numerous cases holding that offers and statements made in connection with plea bargaining negotiations

---

presented may not preside at a subsequent court trial of the defendant on any charges involved in the rejected plea agreement.

(d) Record of Proceedings.—All proceedings pursuant to this Rule, including the defendant's pleading, advice by the court, and inquiry into the voluntariness of the plea or a plea agreement shall be on the record. If the parties stipulate to the court that disclosure of the plea agreement or any of its terms would cause a substantial risk to any person of physical harm, intimidation, bribery, economic reprisal, or unnecessary annoyance or embarrassment, the court may order that the record be sealed subject to terms it deems appropriate."

At the time of the plea agreement in the case, the rule was numbered Maryland Rule 733. The recodification involved no change in substance relevant to this case.

should not be admitted at trial,[9] or that defendants' statements made pursuant to plea agreements rescinded or breached by the State should not be admitted,[10] or that inculpatory statements should not be admitted when there was no showing that the defendant rescinded or breached the plea agreement,[11] or that statements made in connection with withdrawn guilty pleas should not be admitted.[12] Cases in these categories, however, are entirely distinguishable.

We agree that it would frustrate the policy encouraging plea bargaining to admit against a defendant offers or statements made during plea bargain negotiations. Here, however, the inculpatory statements were made pursuant to a valid consummated agreement in accordance with a rule of this Court, where the agreement provided for the admission of such statements if the defendant breached the agreement. We also agree that defendants would be reluctant to enter plea bargaining agreements if the State could thereafter rescind or breach the agreements, and then use at trail the defendant's inculpatory statement made as part of the agreement or pursuant thereto. Here, however, the State neither rescinded nor breached the agreement.

The inadmissibility of statements made in connection with withdrawn guilty pleas is necessary to effectuate the withdrawal of the plea. If the inculpatory statement would

---

**9.** *See, e.g., United States v. Grant,* 622 F.2d 308 (8th Cir.1980); *State v. Vargas,* 127 Ariz. 59, 60–61, 618 P.2d 229 (1980); *Gelfand v. People,* 196 Colo. 487, 491, 586 P.2d 1331 (1978); *People v. Hill,* 78 Ill.2d 465, 36 Ill.Dec. 676, 401 N.E.2d 517 (1980); *Robinson v. State,* 98 Nev. 202, 644 P.2d 514 (1982); Rule 11(e)(6), Federal Rules of Criminal Procedure.

**10.** *See, e.g., Gunsby v. Wainwright,* 596 F.2d 654 (5th Cir., *cert. denied,* 444 U.S. 946, 100 S.Ct. 307, 62 L.Ed.2d 315 (1979); *State v. Hoopes,* 534 S.W.2d 26, 34 (Mo.1976).

**11.** *See, e.g., Ashby v. State,* 265 Ind. 316, 354 N.E.2d 192 (1976).

**12.** *See, e.g., Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); Rule 11(e)(6), Federal Rules of Criminal Procedure.

remain admissible, despite the withdrawal of the plea pursuant to Maryland Rule 4–242(f), the withdrawal would be largely meaningless. In the instant case, however, there was no guilty plea and no proceeding under Rule 4–242(f).

■ In the situation now before us, we do not believe that it would foster the policy favoring plea bargain agreements to hold Coley's statements inadmissible. On the contrary, it would likely have the opposite result, encouraging defendants to rescind consummated plea bargain agreements without justification. Consequently, we decline to extend *Hillard* to the case now before us.[13]

In his brief, Coley makes the assertion that his inculpatory statements were involuntary in the federal constitutional sense and that the admission of the statements violated the Fifth Amendment. No such federal constitutional issue was raised in the petition for a writ of certiorari or in our order granting the petition. Instead, in the petition, Coley's challenge to the voluntariness of his statements was based solely on the Maryland inducement rule set forth in *Hillard* and similar cases. Consequently the federal constitutional issue is not before us. Maryland Rule 813.

AS TO THE PETITIONER WRIGHT, THE JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED, AND THE CASE IS REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

---

**13.** Under analogous circumstances, courts have held that defendants' inculpatory statements are admissible. *See, e.g., United States v. Davis,* 617 F.2d 677 (D.C.Cir.1979), *cert. denied,* 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980); *United States v. Stirling,* 571 F.2d 708 (2d Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978); *Taylor v. Commonwealth,* 461 S.W.2d 920 (Ky.1970), *cert. denied,* 404 U.S. 837, 92 S.Ct. 126, 30 L.Ed.2d 70 (1971); *State v. Hutson,* 537 S.W.2d 809 (Mo.App.1976).

AS TO THE PETITIONER COLEY, THE JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED.

COSTS TO BE EVENLY DIVIDED BETWEEN THE MAYOR AND CITY COUNCIL OF BALTIMORE AND PETITIONER COLEY.

COLE, J., concurs and dissents.

COLE, Judge, concurring in part, dissenting in part.

I have no quarrel with the manner in which the majority resolves the issue presented in Part I of its opinion. Indeed, I thoroughly agree with the analysis. However, I cannot agree with the majority's analysis or conclusion that statements made during a plea bargain are admissible when the defendant rejects the bargain before trial. I therefore respectfully dissent from Part II.

Coley entered into a plea agreement with the State in which the State agreed to allow Coley to plead guilty to murder in the second degree in exchange for Coley's promise to do certain things. The majority concedes that, based on the inducement of a lesser punishment, Coley made certain incriminating statements and confessions. However, the plea agreement also provided that if Coley broke any of his promises, the State could use any of these incriminating statements against him at trial.

The majority admits that Coley reneged and elected to stand trial on a not guilty plea, and that he moved to suppress all of his statements on grounds of involuntariness. The trial court denied his motion and allowed the State to use Coley's statements to convict him. In my view, the admission of these statements was reversible error.

As I see it, plea bargaining involves a *quid pro quo*. The defendant bargains for a reduction in punishment in return for which he incriminates himself. The practice is allowed primarily because it necessarily engages the supervision of the trial court, which must determine if the defendant entered the agreement voluntarily and appreciates the nature of the charge and the consequences of his admission of

guilt. *See, e.g., Blinken v. State,* 291 Md. 297, 435 A.2d 86 (1981); *cert. denied,* 456 U.S. 973, 102 S.Ct. 2235, 72 L.Ed.2d 846 (1982); *State v. Priet,* 289 Md. 267, 424 A.2d 349 (1981); *see also* Md.Rule 4–242(c). This Court encourages the practice of plea bargaining because, when properly supervised by the courts, the practice speeds up the administering of justice. We insist, however, that the trial court be satisfied that the defendant fully understands the agreement and that the agreement is fundamentally fair to society. *Blinken v. State, supra,* 291 Md. at 307–08, 435 A.2d at 91.

Significantly, in this case, the plea agreement between Coley and the State was never presented to the trial court for approval. This was because Coley opted to reject it and exercise his unfettered right to plead not guilty. The majority, while not challenging Coley's right to back out of the agreement, nevertheless holds that his incriminating statements were admissible pursuant to Maryland Rule 4–243. While Rule 4–243 permits the State and a defendant to enter plea bargains and submit the same to the court, nowhere does this rule address the admissibility of statements made by a defendant who withdraws from a plea agreement prior to trial. Consequently, it is not surprising that the majority fails to specify which subsection controls the admissibility of confessions. I suggest that Rule 4–243 is only significant when plea agreements are presented to the trial court for approval. No such presentation was made in this case and thus Rule 4–243 is inapplicable.

When Coley withdrew from the plea agreement, his statements were stripped of whatever sanctity the plea bargain afforded them and they stood on their own. But more important, Coley's rejection of the agreement reclad him with all the constitutional safeguards—including the presumption of innocence—he had temporarily sacrificed under his guilty plea agreement. Thus, because there is no plea agreement to moot the issue of inducement, Coley's statements are required to pass the same test of admissibility as any other inculpatory statement.

The key point is that a plea bargain is not enforceable against the defendant until presented to the court. If the defendant withdraws prior to this time, with or without justification, the parties are returned to their original positions. The defendant can plead not guilty and have a jury trial, and the State can prosecute him on all charges to the fullest extent the law will allow. But, the defendant at this point stands before the court presumed innocent and thus may assert any defense consistent with his plea of not guilty. He is not before the court as one who has breached a plea bargain.

One of the defenses the defendant may assert is that any statement offered be proved voluntary under the strictures of *Hillard v. State*, 286 Md. 145, 406 A.2d 415 (1979). Under *Hillard*, as the majority notes, a statement is involuntary "if it is induced by any official promise which redounds to the benefit or desire of the defendant." *Stokes v. State*, 289 Md. 155, 160, 423 A.2d 552, 554 (1980). Thus, the majority concedes that, had Coley's statements not been made as part of a plea bargain, they would be involuntary under the *Hillard* test because the statements were induced by an offer of a lesser punishment and did not stem from remorse or an inner desire to tell the truth.

*Hillard* made clear:

that under Maryland criminal law, independent of any federal constitutional requirement, if an accused is told, or it is implied, that making an inculpatory statement will be to his advantage, in that he will be given help or some special consideration, and he makes remarks in reliance on that inducement, his declaration will be considered to have been involuntarily made and therefore inadmissible.

*Hillard v. State, supra,* 286 Md. at 153, 406 A.2d at 420.

The Michigan Supreme Court has recently addressed this issue and its opinion provides sound reasoning. In *People v. Conte*, 421 Mich. 704, 365 N.W.2d 648 (1984), the court consolidated five appeals limited to the issue of "whether a defendant's inculpatory statement is inadmissible per se if

induced by a law enforcement official's promise of leniency." After rejecting both the per se and totality of the circumstances test, the court adopted the rule that "a confession caused by a promise of leniency is involuntary and inadmissible." *Id.* at 729, 365 N.W.2d at 657. This rule is much like Maryland's rule as set forth in *Hillard. See Hillard v. State, supra,* 286 Md. at 153, 406 A.2d at 420; *see also Stokes v. State, supra,* 289 Md. at 160, 423 A.2d at 554. The Michigan Supreme Court then set forth a two-step test: (1) Was a promise of leniency made? and (2) Did that promise cause the confession?

*People v. Norman* was one of the consolidated cases, and it is remarkably similar to Coley's case. Norman was an accomplice in a murder during a robbery. After several meetings with the prosecutor, an agreement was made wherein, *inter alia,* the defendant agreed to identify and testify against his accomplice in exchange for a plea to second degree murder. Thereafter, the defendant executed a written statement implicating himself and testified before the grand jury. Norman then withdrew from his agreement, entered a plea of not guilty, and moved to suppress his testimony.

The Michigan Supreme Court held that (1) there was no question as to the existence of a promise of leniency, and (2) that a causal nexus existed between the State's promise and the defendant's statement. The Court noted that "the promises made in the plea agreement provided the sole motivation for defendant's incriminating testimony. The defendant did not confess, nor at any time express any desire to confess, in the absence of the promise of leniency given by the prosecution." *People v. Conte, supra,* 421 Mich. at 747–48, 365 N.W.2d at 666.

Coley's case is similar. The State offered him a plea to second degree murder in exchange for his incriminating statement, and it is clear that this was the sole motivation for his statements. Thus, it is clear to me that improper inducements to testify are not shielded from the rule

against inducements merely because they are made as a part of a plea agreement which fails.

Assuming, *arguendo*, that the statements were voluntary, they fail to surmount yet another hurdle: the rule of confidentiality during plea negotiations. Maryland's criminal justice system encourages plea bargaining. *See, e.g., Kisamore v. State,* 286 Md. 654, 656, 409 A.2d 719, 720 (1980); *State v. Brockman,* 277 Md. 687, 692–93, 357 A.2d 376, 380–81 (1976). Indeed, without plea bargaining, current judicial resources would be sorely inadequate. *State v. Brockman, supra,* 277 Md. at 692–93, 357 A.2d at 380–81; *see also Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432 (1971). Most jurisdictions are in a similar predicament and have consequently recognized the necessity of a rule that makes guilty pleas that are withdrawn, plea offers that do not come to fruition, and statements made in connection with guilty pleas and plea offers privileged. The reasoning for this rule was expressed in *United States v. Herman,* 544 F.2d 791, 796 (5th Cir.1977):

Even before the enactment of rule 11(e) (6), we held that plea-related statements are inadmissible, recognizing the inescapable truth that for plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him. In excluding a defendant's plea-related statements, Judge Coleman wrote:

If, as the Supreme Court said in *Santobello,* plea bargaining is an essential component of justice and, properly administered, is to be encouraged, it is immediately apparent that no defendant or his counsel will pursue such an effort if the remarks uttered during the course of it are to be admitted in evidence as proof of guilt. Moreover, it is inherently unfair for the government to engage in such an activity, only to use it as a weapon against the defendant when negotiations fail.

*Accord United States v. Verdoorn,* 528 F.2d 103, 107 (8th Cir.1976); *Mann v. State,* 96 Nev. 62, 63, 605 P.2d 209, 210 (1980); Fed.R.Crim.P. 11(e)(6).

This underlying principle—that a party's admission will not be used against him if an agreement is not reached or fails—pertains as well to civil cases. In civil cases, the parties may engage in negotiations without fear that their statements will be used against them at trial. *See, e.g., Mateer v. Reliance Insurance Co.,* 247 Md. 643, 646, 233 A.2d 797, 799 (1967); *Biggs v. Langhammer,* 103 Md. 94, 102, 63 A. 198, 200 (1906).

The majority readily concedes that statements made during plea bargaining should not be admitted against a defendant. This principle has been recognized by the United States Supreme Court. In *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), the Court held that, when a guilty plea is entered and then withdrawn, the guilty plea cannot later be used by the prosecution as an admission. The Court concluded that the guilty plea becomes a nullity and therefore is not competent evidence and that a contrary result would effectively eliminate the withdrawal of the plea. *Id.* at 223–24, 47 S.Ct. at 583, 71 L.Ed.2d at 1012; *accord State v. Vargas,* 127 Ariz. 59, 618 P.2d 229 (1980); *Wilson v. State,* 253 Ark. 10, 484 S.W.2d 82 (1972); *Gelfand v. People,* 196 Colo. 487, 586 P.2d 1331 (1978); *Bennett v. Commonwealth,* 234 Ky. 333, 27 S.W.2d 24 (1930); *Robinson v. State,* 98 Nev. 202, 644 P.2d 514 (1982).

The majority also recognizes that admissions of such statements would "frustrate the policy encouraging plea bargaining." Maj.Op. at 585. Nevertheless, the majority concludes that, because Coley's statements "were made pursuant to a valid consummated agreement pursuant to a rule of this Court, where the agreement provided for the admission of such statements if the defendant breached the agreement," Coley's statements were admissible. *Id.* Thus, the majority's conclusion rests on the assumption that Rule 4–243 permits statements made during plea negotia-

tions to be admissible notwithstanding the general rule of exclusion.

After thoroughly reviewing the rules, I cannot agree. As previously discussed, Rule 4–243 sets forth the general rules governing plea bargaining. Nowhere in the Rule, however, is there a provision permitting the State's Attorney to extract a confession from a defendant and use it regardless of whether the defendant fulfills or reneges on the plea agreement. The rule merely permits the defendant to agree to plead guilty or *nolo contendere;* the Rule does not even address confessions. Therefore, Rule 4–243 does not abrogate the common law rule that statements made during plea negotiations are confidential and inadmissible.

It is of no consequence that the State's Attorney included a provision in the plea agreement that allowed him to use any statements by the defendant if the defendant breached the agreement. Clearly, the State's Attorney has no power to override the laws of this State. Had the State's Attorney's discussions with Coley not been part of a plea agreement, the State's Attorney's warning to the defendant that "anything you say can be used against you" would not make any resulting confession by the defendant less objectionable if induced.

Under the majority's holding today I can only assume that "full-use" provisions for confessions made in plea agreements will become the standard operating procedure for the State's Attorney. The defendant, whose primary concern is to escape the maximum punishment, will be lulled into virtually any agreement that promises him a lesser sentence. The fact that the State's Attorney seeks to deprive the defendant of his common law right to withdraw from the agreement and stand trial is of no concern to the defendant at that moment. Here, Coley was willing to promise anything to avoid exposure to the death penalty. Any person in like circumstances would do the same.

In sum, what the State's Attorney's practice intends to do is to deprive the defendant of the right to change his mind.

Such a practice denies the defendant the right to reject the agreement and to plead not guilty free from the threat that any incriminating statements made during the plea negotiation will be entered against him at trial. The State's Attorney cannot make admissible what the law says is inadmissible. The majority cites no authority that permits the State's Attorney to ignore the dictates of *Hillard.* Accordingly, Coley's statements should not have been admitted.[1]

Therefore, I dissent from Part II.

---

**1.** It is also clear to me that had Coley objected on either federal or state constitutional grounds his statements would have been inadmissible.